**REPUBLIC INSURANCE COMPANY and Southwest Adjusting Services, Inc., Appellants,**

**v.**

**Linda H. STOKER and John Stoker, Appellees.**

No. 08–92–00394–CV.

Court of Appeals of Texas, El Paso.

Nov. 17, 1993.

Rehearing Overruled Dec. 15, 1993.

---

Joseph L. Hood, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellants.

Terry Bassham, Joel Fry, Moreno, Fry & Bassham, El Paso, for appellees.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This appeal presents us with the issue of whether an insured's extra-contractual claims for breach of the duty of good faith and fair dealing, the Texas Deceptive Trade Practices Act, and Texas Insurance Code, are always dependent upon underlying breach of contract claims, or whether their violation creates a cause of action even where an unrelated exclusion is later found to preclude coverage under the contract. Relying upon the Supreme Court's decision in *Viles v. Security National Insurance Co.*, 788 S.W.2d 566 (Tex.1990), we conclude that plaintiffs here were entitled to a trial on their extra-contractual causes of action even where their contract claim was precluded. We affirm the trial court's judgment.

## FACTS

On December 26, 1989, Linda Stoker was driving on Interstate 20 near Weatherford, Texas on her way home to El Paso from Arlington, where she had been visiting relatives over the Christmas holidays. Traffic was heavy and she was driving well under the speed limit. Cresting a hill, she suddenly encountered braking and stopped traffic. A load of furniture had been dropped in the highway by an unknown driver, forcing drivers to take emergency evasive action. Ms. Stoker rear-ended the car immediately in front of her, driven by Galen Templeton, who had already rear-ended Francis Cox in front of him. Ms. Cox had braked suddenly to avoid the furniture, and the record is contradictory as to whether she hit any of it. It is clear that Ms. Stoker's collision with Templeton did not push him into Ms. Cox a second time.

A Department of Public Safety officer investigated the accident, and concluded the cause was the unknown driver's failure to secure the load of furniture. It is uncontro-

verted that Ms. Stoker never hit the furniture or the unknown vehicle that dropped it.

The Stokers carried liability and uninsured/underinsured vehicle coverage with defendant Republic Insurance Co., but no collision insurance. They submitted a claim to Republic. Republic hired Abraham Ponce, a claims representative with defendant Southwest Adjusting Service in El Paso to investigate the Stokers' claim. Ponce interviewed Ms. Stoker, took pictures of her damaged car, and prepared a damage appraisal. A few days later, Ms. Stoker sent Ponce photographs of the scene taken by her daughter, showing furniture strewn along the Interstate. Ponce denied Stoker's uninsured motorist claim, saying she had been more than 50 percent at fault in causing the accident. It is undisputed that at the time Ponce denied Stoker's claim, he had not reviewed the DPS accident report, had not interviewed Templeton or Cox, had not spoken with Stoker's daughter (a passenger in the car at the time of the collision), nor John Stoker, who was driving a rental truck immediately behind his wife when the accident occurred. Ponce's denial of the claim was based only upon the information he received from Ms. Stoker. Later, under Ms. Stoker's liability coverage, he sent Templeton a check for the damage to his car.

Several months later, Linda Abney, Senior Claims Examiner at Republic, confirmed the decision to deny the Stoker claim, stating she "felt that the proximate cause of the collision, ... was not (*solely*) the scattered furniture on the roadway."[1] This oddly punctuated letter was the last correspondence between the insurer and Stoker before she and her husband filed suit, alleging breach of the insurance contract, breach of the insurer's duty of good faith and fair dealing, and DTPA and Texas Insurance Code violations. Neither Ponce nor Abney ever mentioned the lack of contact between Ms. Stoker's car and

the furniture-laden pickup as a reason for denying uninsured motorist coverage.

Defendants filed a motion for summary judgment, claiming that because there was no physical contact between the Stoker vehicle and the dump-and-run pickup truck, Republic had no obligation to pay for damage to the Stoker's car. The motion did not mention Ms. Stoker's percentage of responsibility as a reason for denying the contract claim. The summary judgment urged, as well, that because there was no coverage under the policy, the Stokers' extra-contractual claims failed also, as a matter of law. The trial court granted summary judgment on the contract, but refused to do so on the tort and deceptive practice allegations.

A jury resolved all remaining issues in favor of plaintiffs, finding among other things that Republic had breached its duty of good faith and fair dealing, had engaged in unfair or deceptive acts by misstating Texas law and by not attempting to effectuate a prompt, fair, and equitable settlement of a claim, and had behaved unconscionably. The jury also found that Southwest Adjusting Service had engaged in unfair or deceptive acts by not attempting to effectuate settlement, and that it had behaved unconscionably. The jury found that both defendants had engaged in this conduct knowingly. Plaintiffs elected recovery under their DTPA/Insurance Code causes of action, thus obtaining attorney's fees and treble damages. Although judgment was entered under the deceptive practices theory, defendants argue before this Court that plaintiffs are not entitled to recover under their good faith and fair dealing claim either because they could not establish any underlying contractual obligation. We will examine these arguments together, as the breach of good faith and fair dealing can establish DTPA and Texas Insurance Code Article 21.21 violations, and the courts use similar analyses in evaluating both

---

1. By implying that unless the furniture in the road was the *sole* cause of the collision between Mr. Templeton and the insured, and therefore Ms. Stoker had no uninsured motorist coverage, Republic misstated Texas law. In 1973, the Texas Legislature adopted the comparative negligence doctrine, thus abolishing the harsh "sole cause" doctrine apparently relied upon by Re

public in denying this claim. See TEX.CIV.PRAC. & REM.CODE ANN. art. 33.001(a) (Vernon Supp.1993), formerly TEX.REV.CIV.STAT.ANN. art. 2212a, § 1. The jury could reasonably conclude, therefore, that Republic reviewed Ms. Stoker's claim applying law obsolete almost twenty years before this accident occurred.

types of extra-contractual claims against insurers. See *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129, 135 (Tex.1988); *Allied General Agency, Inc. v. Moody*, 788 S.W.2d 601, 604 (Tex.App.—Dallas 1990, writ denied).

### *"INDIRECT CONTACT" CLAIM*

In a cross-point of error, plaintiffs urge that the trial court should not have granted summary judgment on their breach of contract claim because the "physical contact/hit" requirement of the insurance policy was satisfied by a chain of contact connecting the pickup truck, its dropped furniture, the Cox vehicle, the Templeton vehicle, and ultimately Ms. Stoker.[2] We find the evidence does not warrant application of the indirect contact rule here, and overrule plaintiffs' cross-point.

■■■ Generally, an insured cannot recover on the uninsured motorist portion of a policy coverage when an unknown motorist causes damage, absent actual physical contact between the two. *Young v. State Farm Mutual Automobile Insurance Co.*, 711 S.W.2d 262 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *Goen v. Trinity Universal Insurance Co. of Kansas, Inc.*, 715 S.W.2d 124, 126 (Tex.App.—Texarkana 1986, no writ). This requirement was spelled out in the Stokers' insurance policy itself, and has been codified in the statutes governing insurance coverage. The Stoker's insurance policy provided:

'Uninsured motor vehicle' means a land motor vehicle or trailer of any type, . . . [w]hich is a hit and run vehicle whose operator or owner cannot be identified and which hits . . . a vehicle which you or any family member are occupying. . . .

Similarly, the Texas Insurance Code provides:

[F]or the insured to recover under the uninsured motorist coverages where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured. Tex.Ins.Code Ann. art. 5.06–1(2)(d) (Vernon Supp.1993).

The evidence in this case established that Ms. Stoker was not hit by the unidentified pickup truck, nor did she hit any of the furniture it dropped. Indeed, there is no competent evidence that *any* driver involved in the chain-reaction collision actually hit the furniture.

Plaintiff's summary judgment response contains only the testimony of John Stoker, who from his vantage of an elevated truck cab, saw:

[F]urniture falling off a brown pickup truck onto the Interstate. A vehicle traveling one car ahead of my wife came to a stop in the left-hand lane in order to avoid the furniture which had fallen from the pickup. The vehicle immediately preceding my wife's car rear-ended the vehicle which had come to a stop in the left-hand lane and my wife subsequently rear-ended that second vehicle.

The only evidence which comes close to saying that any vehicle involved actually hit the furniture is the police investigative report (which was not part of the summary judgment record, but was admitted into evidence at trial). Even it does not really reach that conclusion. It describes the event this way:

A brown pickup carrying furniture traveling west on IH–20 had improperly secured load. A table and a few other small items spilled onto IH–20 in front of unit # 2 [Cox] which tried to avoid striking the furniture and caused damage to # 2. Unit # 2 applied brakes causing unit # 3 [Templeton] and unit # 4 [Stoker] to take evasive action too. Unit # 2 was struck in the rear by # 3 and unit # 4 struck # 3 in the rear. Minor damage to the vehicles.

If this narrative can be interpreted to mean that Ms. Cox did hit the furniture, it is nevertheless uncontroverted that there was never contact, direct or indirect, between Cox and Stoker. Moreover, the police report was offered by plaintiff only for the purpose

---

2. In reviewing the trial court's grant of summary judgment, we adhere to the well-established standard set forth in *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985).

of showing that Ponce's investigation was inadequate. Plaintiffs' counsel stated several times that he was offering the report for that purpose only, not for the truth of assertions contained within it. Thus, this case does not present a fact question of even indirect physical contact between the pickup's load and Ms. Stoker's vehicle.

■ We acknowledge plaintiffs' argument that the public policy behind the physical contact rule is to prevent false insurance claims against phantom drivers arising from single-car accidents. Clearly, that is the rule's underlying purpose. Plaintiffs argue, therefore, that where there is independent corroborating evidence that an unknown negligent driver caused damage to the insured, the purpose of the physical contact rule is satisfied, and this should be enough to establish uninsured motorist coverage. They cite *Latham v. Mountain States Mutual Casualty Co.,* 482 S.W.2d 655 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.) in support of their position. It is true that *Latham* recognized "indirect contact" as sufficient to satisfy these requirements in a situation where a hit-and-run driver rear-ended the car immediately behind plaintiff, thus forcing the middle car into plaintiff's vehicle. The facts here are different, however.

While it is uncontroverted that an unknown pickup truck negligently dropped unsecured furniture onto Interstate 20, and there is certainly a fact question as to how much of the responsibility for the Stoker's damages lies with this dump-and-run driver, we simply cannot hold that prerequisites for uninsured motorist coverage were satisfied here. The legislature's chosen method for enforcing public policy by requiring "physical contact" with an unknown negligent driver has survived constitutional challenge on several occasions. See *Young,* 711 S.W.2d at 262–63; *Phelps v. Twin City Fire Insurance Co.,* 476 S.W.2d 419 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Beacon National Insurance Co. v. Fenwick,* 557 S.W.2d 379 (Tex.Civ.App.—Eastland 1977, writ dism'd). In light of the clear legislative and contractual language controlling here, we cannot say that plaintiffs created a genuine issue of material fact on even the indirect contact theory. Plaintiffs' cross-point of error is overruled.

### EXTRA–CONTRACTUAL CLAIMS

Thus, we are left with the question of whether plaintiffs' extra-contractual claims survived dismissal of the breach of contract action. In fifteen closely interrelated points of error, Republic and Southwest urge that it was error for the trial court to enter judgment for the Stokers, arguing that no act or omission by defendants could have proximately caused any damage to plaintiffs. Defendants claim that because the Stokers had no contractual right to recover, the insurer's refusal to pay them (no matter how wrong the reason) could cause no harm. We disagree.

■ The Texas Supreme Court recognizes that insurers have a duty to deal fairly and in good faith with their insureds. This duty does not emanate from the terms of the insurance contract itself, but from the special obligation imposed "as a result of a *special relationship* between the parties governed or created by a contract." [Emphasis added]. *Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165, 167 (Tex.1987); *Viles,* 788 S.W.2d at 567. In *Viles,* the Supreme Court specifically stated that:

> [A] breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract. *Viles,* 788 S.W.2d at 567.

In that case, plaintiffs made a claim against their homeowner's policy but failed to file their sworn proof of loss within 90 days as required in the insurance contract. In deciding that the Viles' were nonetheless entitled to recover for their insurer's breach, the Court held, in language particularly pertinent to this case, that:

> Our decision today promotes and preserves the policies underlying our recognition of a common-law tort action for breach of the duty of good faith and fair dealing in *Arnold* and subsequent cases. The 'special relationship' between the insured and insurer imposes on the insurer a duty to investigate claims thoroughly and in good

faith, and to deny those claims only after an investigation reveals there is a reasonable basis to do so. [To hold otherwise] would destroy these policies and, in essence, *abolish the tort by permitting the insurer to justify on any basis, no matter how technical and as late as trial, its failure to make a thorough investigation prior to denial of a claim. Id.,* at 568 [Emphasis added].

We find *Viles* directly on point here. One essential element of the insurer's duty is to conduct a reasonable investigation before denying benefits. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex. 1988). Where that investigation does not include inquiries generally considered essential, or where it applies erroneous standards of fault and liability, the insurer's denial of a claim can be an independent breach of good faith and fair dealing, even where another reason for denying the claim is later discovered to justify the denial.

■ In this case, the independent insurance investigator, Abraham Ponce, denied Ms. Stoker's claim without reviewing the police report on the accident, without viewing the accident site or obtaining photographs of it beyond those given him by Ms. Stoker, without interviewing Mr. Templeton, Ms. Cox, Mr. Stoker, Ms. Stoker's daughter Sandra Mitchell, or the DPS trooper who initially investigated the accident scene. Ponce concluded that Ms. Stoker was more than 50 percent responsible for the rear-end collision by comparing her fault only with that of Mr. Templeton. He made no effort to account for the fault of the dump-and-run pickup driver, or for any responsibility borne by Ms. Cox.

Ponce *never* contended he was denying the claim because there was no contact between the responsible pickup truck and Stoker's car; he never recommended that as a basis for denial, and in fact was unaware that Republic eventually adopted that theory after suit was filed. His only basis for denying the claim was his conclusion that, comparing the negligence of Stoker to that of Templeton only, Stoker was more than 50 percent responsible for the accident, and the furniture in the highway was not "solely" the cause of

that collision. Linda Abney of Republic expressly adopted this theory too, never mentioning the lack of physical contact as a reason for denying the Stoker claim. The law is clear that "[w]hether there is a reasonable basis for denial ... must be judged by the facts before the insurer at the time the claim was denied." *Viles,* 788 S.W.2d at 567.

We find this makes out a claim for the tort of breach of the duty of good faith and fair dealing and for violation of the DTPA and Tex.Ins.Code Ann. art. 21.21, § 16 (Vernon Supp.1993). The jury was entitled to find that Ponce, and later Abney, denied the Stoker's claim based upon an inadequate investigation, an incomplete apportionment of responsibilities amongst all parties to this accident, and a misrepresentation of law that was abolished in Texas many years ago. This sort of preemptory claim denial is exactly what extra-contractual causes of action are designed to discourage. The jury here was entitled to find that, rather than treat its insured as a person to whom it owed a special duty, the insurer and its adjuster took a position adversarial to Ms. Stoker from the start. Ponce set out, not to investigate the facts of this claim, but to deny coverage because the collision was a rear-ender.

Finally, we note that the Fifth Circuit Court of Appeals, applying this body of law in an opinion by Justice Reavley, formerly of the Texas Supreme Court, has held in an Article 21.21 case that even where the underlying insurance contract did not cover plaintiff's loss, nevertheless:

> Because the obligations made enforceable by article 21.21, like the common law duty of good faith and fair dealing, are imposed independent of the duties under the policy itself, we believe that *Viles allows an insured to recover under article 21.21 even in the absence of policy coverage.* [Emphasis added]. *First Texas Savings Ass'n v. Reliance Insurance Co.,* 950 F.2d 1171, 1179 (5th Cir.1992).

Thus, the trial court's actions here, far from creating a "wholesale revision of the coverage extended under a policy of insurance" as defendants would frame it, correctly applied the law as pronounced by the Texas Supreme Court and following the lead of a former

Supreme Court Justice on the Fifth Circuit Court of Appeals.

We believe our decision here is further justified because insureds are entitled to rely upon the insurer's stated grounds for denying a claim, so they may make reasoned decisions about pursuing claims in court. As the *Viles* Court noted, to hold otherwise vitiates the tort by allowing the insurer to escape liability under any theory that allows it to avoid payment, no matter how late in the day that theory is discovered and no matter how weak the earlier theory that is abandoned.[3] Here, it would force the Stokers to undergo the trouble and expense of hiring a lawyer and bringing suit, believing they could prevail by proving simply that Ms. Stoker was less than 50 percent at fault in causing an accident, only to find later that the insurer's counsel has crafted another reason for denial which was never suggested to them before they filed suit. To allow such an outcome would defeat the entire purpose of this tort doctrine, as Justice Doggett noted in *Viles*. Appellants' Points of Error One through Fifteen are overruled.

### CONCLUSION

Although we decline to expand the "indirect contact" theory of uninsured motorist coverage here, and therefore find the trial court correctly entered summary judgment on the breach of contract claim, we nevertheless find that plaintiffs were entitled to judgment on their extra-contractual theories of recovery. We therefore affirm the trial court's judgment.

KOEHLER, Justice, dissenting.

I respectfully dissent from the majority opinion. This case represents what, in my opinion, is an excellent example of the difference between judicial activism and judicial conservatism.

The majority, relying heavily on *Viles v. Security National Insurance Co.,* 788 S.W.2d 566 (Tex.1990), are today holding that an insured who has no cause of action against her own insurance company for breach of contract because the loss is not and was never covered by the uninsured/underinsured provisions of the policy, has nevertheless a cause of action for breach of the duty of good faith and fair dealing simply because the claims representative and a company employee gave the wrong reasons in denying the claim and/or did not conduct a "thorough" investigation. In other words, even though the insurance company has no liability for its insured's loss under the policy provisions, it better be right and polite when it denies a claim or it could and probably will become liable for damages on the theory that it did not deal with its insured in good faith. It used to be that when your insurance company, its agents and representatives did not treat you with courtesy and intelligence when you suffered a noncovered loss, you merely got yourself a new company. But now under *Viles* and the majority reasoning herein, you will hope that when suffering a noncovered loss, the company claims representative, when denying your claim, is rude and gives you some cockamamie[1] or wrong reason for not honoring your claim.

It is important to keep in mind that there is absolutely no evidence that Mrs. Stoker's[2] vehicle came into physical contact with either the uninsured (unknown) pickup truck or the furniture that fell off the pickup and onto the highway and in the absence of such contact, the insurer has no liability under the uninsured/underinsured coverage.

In *Viles,* the insurance company improperly denied a claim valid at the time it was made and later after continuing to negotiate with its insureds, denied the claim on the technical ground that the insureds had failed to submit a sworn proof of loss within the policy required 91 day period. Justice Dog-

---

3. We note that this case does not present a situation where the insurer pled alternative defensive theories, or relied upon more than one basis for denying a claim. Once suit was filed, the comparative responsibility theory disappeared. Before suit was filed, it was never mentioned.

1. Cockamamie also cockamamy *adj. Slang....* 2. Ludicrous; nonsensical. THE AMERICAN HERITAGE DICTIONARY 286 (2nd ed. 1985).

2. Referred to as "Mrs. Stoker" in Appellees' Brief.

gett writing for a simple majority,[3] held expansively that because of the "special relationship" between insurer and insured, there is imposed "on the insurer a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals there is a reasonable basis to do so." *Viles,* 788 S.W.2d at 568. Under that broad pronouncement and reasoning, an insurer would become liable to its insured for bad faith damages even though it made a prompt denial of a noncovered claim unless it had previous to the denial conducted "a thorough investigation."

Interestingly, both the majority and the concurrence in *Viles* cite *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987) and *Chitsey v. National Lloyds Ins. Co.,* 738 S.W.2d 641 (Tex.1987) in support of their positions. While those cases support the end disposition in *Viles,* they do not support the sweeping Doggett dogma as applied to this case because in both of those cases the insured had valid claims whereas in this case, Mrs. Stoker did not have a valid claim under the terms of the uninsured/underinsured coverage. Moreover, the majority opinion and disposition herein and the pronouncement in *Viles* (as pointed out in the *Viles* concurrence) conflict with the holding in *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988), which required that the insured asserting a breach of the good faith duty claim, must first establish "the absence of a reasonable basis for denying or delaying payment of the [policy] benefits." *Aranda* went on to say that this test requires "an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." 748 S.W.2d at 213. Under *Aranda,* if the insurer had a reasonable basis for denying the claim, it did not matter whether it had conducted "a thorough investigation" or whether its claims representatives had given a valid reason. The same was true under *Arnold* where the insurer should have paid and ultimately did pay its insured under the uninsured motorist coverage following suit and judgment on the policy and the question in the subsequently filed

breach of the good faith duty case was whether the insurer had a reasonable basis for denying the uninsured motorist claim. *Arnold,* 725 S.W.2d at 167; *State Farm Lloyds, Inc. v. Polasek,* 847 S.W.2d 279, 283 (Tex.App.—San Antonio 1992, no writ). Put in another way, the "reasonable basis for denying the claim or delaying payment of the claim," *Aranda,* 748 S.W.2d at 213, only comes into play when the claim is valid. Where, as in the case under consideration, the claim is not covered under the policy, the insurance company has by definition a reasonable basis for denying the claim. Moreover, there is a duty on the part of the insured and his/her attorney to read the policy to determine whether the insured has a possible claim under the terms of the policy before filing a lawsuit.

Under the facts of this case and the law relating to the duty of good faith and fair dealing as it was before *Viles,* in *Arnold, Aranda* and this case and still should be based on the facts in all of these cases, I would reverse the judgment of the trial court and render for Appellants.

---

**3.** Defined herein as a 5–4 majority.