**Tuan Van LE, Appellant,**

v.

**FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, State Farm Mutual Automobile Insurance Company, and Allstate Indemnity Company, Appellees.**

No. 01–94–00880–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 8, 1996.

Rehearing Overruled Jan. 27, 1997.

David L. Monroe, Levert J. Able, Houston, for appellant.

Diana K. Ball, J.R. O'Brien, Ronald L. Bair, Teresa Carver, Houston, Ronnie Arnold, Richmond, for appellees.

## EN BANC OPINION ON SECOND AMENDED SECOND MOTION FOR REHEARING

TAFT, Justice.

The appellant's second amended second motion for rehearing is denied. We withdraw our previous opinion and substitute the following in its place.

The plaintiff, Tuan Van Le, sued three insurance companies, Farmers Texas County Mutual Insurance Company (Farmers), State Farm Mutual Automobile Insurance Company (State Farm), and Allstate Indemnity Company (Allstate) on the UM provisions and sued Farmers and State Farm on the PIP provisions. Tuan Le also sued for extra contractual damages for the insurance companies' failure to timely pay under these policies.

The issue we address is whether a passenger in a car may recover under an uninsured motorist (UM) provision or personal injury protection (PIP) provision for injuries suffered from a drive-by shooting. We hold the passenger may not recover under either provision. We affirm.

### Facts

Late in the evening on March 9, 1991, Tuan Le was riding as a passenger in a car on his way home from a movie. Tuan Le was sitting in the back seat on the right-hand side of the car. As the car approached the Dixie Farm Road exit off Interstate 45, Tuan Le heard a banging noise. Tuan Le noticed a light-colored American car with tinted windows pull up alongside. The next thing Tuan Le remembered was a burning sensation.

He had been shot under his left arm. The bullet lodged in his spinal cord, causing paralysis from the waist down. Tuan Le testified in a deposition that no one in the car saw a weapon. The two cars did not collide during the incident, and the shooter is not known.

Tuan Le sought UM and PIP benefits from Farmers, State Farm, and Allstate.[1] All claims were denied. Farmers paid PIP benefits late, and State Farm denied the PIP claims. Tuan Le filed suit against them, making the same demands and including claims for extra contractual damages for failing to pay benefits. The trial court abated the issue of extra contractual claims pending resolution of the contractual issues. All the insurance companies filed motions for summary judgment. The trial court granted each insurance company's motion for summary judgment.[2]

**The Motions for Summary Judgment**

In its motion for summary judgment, State Farm argued it was entitled to summary judgment because drive-by shooting injuries are not covered by the UM or PIP provisions, and State Farm is not liable for extra contractual tort damages for denying Tuan Le's claim because the policy did not cover Tuan Le's claims. State Farm attached a copy of the insurance policy in question to its motion for summary judgment.

In its motion for summary judgment, Allstate argued the UM provision did not provide benefits for injuries caused by a drive-by shooting. Allstate attached a copy of the insurance policy to its motion for summary judgment. Allstate also filed a second motion for summary judgment, contending it did not have to pay extra contractual benefits on Tuan Le's UM claims because Tuan Le is not entitled to UM benefits.

In its motion for summary judgment, Farmers argued Tuan Le's UM claim did not

fall within its policy provision because the unidentified vehicle made no physical contact with the vehicle in which Tuan Le was riding and Tuan Le's injuries did not arise from the use of the uninsured motor vehicle. Farmers attached a copy of the insurance policy and a copy of the interrogatories and request for admissions served on Tuan Le to its motion for summary judgment. Farmers attached a copy of the $2,500 check it sent to Tuan Le in satisfaction of his PIP claim. Farmers filed a second motion for summary judgment, contending it did not have to pay extra contractual benefits on Tuan Le's UM claims because Tuan Le was not entitled to UM benefits.

In his response to the motions, Tuan Le made four arguments. First, there are fact questions on whether the liability of the owner or operator of the uninsured vehicle arose from the ownership, maintenance, or use of the uninsured vehicle, within the UM language of the policy provisions. Second, the physical contact requirement applicable to "hit and run" vehicles is not applicable to his cause of action or, alternatively, the physical contact requirement is satisfied by the bullets fired from the uninsured vehicle. Third, he is entitled to PIP benefits because there is a connection between a vehicle and the incident or there is a question of fact as to whether there is a connection between the vehicle and the incident that prevents summary judgment. Fourth, the trial court should not have granted State Farm's motion for summary judgment for the denial of PIP benefits and extra contractual damages. Tuan Le attached to his response a copy of his deposition testimony and a letter he sent to Farmers demanding payment of $22,500, plus $2,500 in attorney fees under its UM provisions.

**A. Uninsured motorist provisions**

In point of error one, Tuan Le contends generally that the trial court erred in grant-

---

1. Farmers insured the vehicle in which Tuan Le was riding at the time of the accident. That vehicle was owned by Loan Thi Hoang. Thanh Nguyen was driving the vehicle at the time of the accident. Tuan Le asserts he also was covered under a State Farm policy issued to Cay Tran and Christine Le, and an Allstate policy issued to

Cay Tran and Kiet Le, who are all relatives of Tuan Le.

2. Tuan Le also sued Farmers for delay in providing medical benefits. A jury decided in favor of Tuan Le and that issue is not appealed.

ing summary judgment for Farmers, State Farm, and Allstate. *See Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex. 1970). In point of error two, Tuan Le asserts that the trial court erred in granting summary judgment for Farmers, State Farm, and Allstate on his UM claims.

 For summary judgment to be proper, the movant must be entitled to judgment as a matter of law, and there must be no issues of material fact. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Mayer v. State Farm Mut. Auto. Ins. Co.,* 870 S.W.2d 623, 624 (Tex.App.—Houston [1st Dist.] 1994, no writ). For a defendant to be entitled to summary judgment on a plaintiff's cause of action, the defendant must disprove, as a matter of law, one of the essential elements of the plaintiff's cause of action. *Lear Siegler,* 819 S.W.2d at 471. On review, we view the evidence in the light most favorable to the non-movant. *Id.* Once the defendant has established its right to summary judgment, the burden shifts to the plaintiff, who must then respond and present any issues to the trial court that would preclude summary judgment. *Soodeen v. Rychel,* 802 S.W.2d 361, 362 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

██ When a summary judgment does not specify the ground upon which the trial court granted it, the reviewing court will affirm the judgment if any theory included in the motion is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Summers v. Fort Crockett Hotel, Ltd.,* 902 S.W.2d 20, 25 (Tex.App.—Houston [1st Dist.] 1995, writ denied). In its judgment, the trial court did not specify the ground on which the summary judgment was granted.

### 1. Coverage under UM provision

The UM provisions in the Insurance Code provide:

> The portion of a policy form adopted under Article 5.06 of this code to provide coverage under this article shall require that in order for the insured to recover under the uninsured motorist coverages where the owner or operator of any motor vehicle which causes bodily injury or property

damage to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured.

TEX. INS.CODE ANN. art. 5.06–1(2)(d) (Vernon Supp.1996).

The UM provisions in the three insurance policies are identical and read as follows:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

> . . . .

> "Covered Person" as used in this Part means:

> (1) You or any family member;

> (2) Any other person occupying your covered auto;

> (3) Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in (1) or (2) above.

> . . . .

> "Uninsured Motor Vehicle" means a land motor vehicle or trailer of any type,

> (1) To which no liability bond or policy applies at the time of the accident.

> (2) Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

> (a) you or any family member;

> (b) a vehicle which you or any family member are occupying; or

> (c) your covered auto.

In our analysis, we consider (1) whether Tuan Le's personal injuries stem from the "use" of the insured vehicle, and (2) whether a drive-by shooting in which there is no collision can meet the physical contact requirement set out in the policies.

## 2. Use of the vehicle

Tuan Le contends that a drive-by shooting arises from the "use" of a vehicle under the insurance policies and that the incident would not have occurred except for the "use" of the vehicle.

▮ In construing an insurance contract, we consider all parts of the contract together to implement the intention of the parties. *Royal Indemnity Co. v. Marshall,* 388 S.W.2d 176, 180 (Tex.1965); *Crown Cent. Petroleum Corp. v. Jennings,* 727 S.W.2d 739, 741 (Tex.App.—Houston [1st Dist.] 1987, no writ). We interpret words that are subject to more than one definition so they are harmonious with, rather than repugnant to, other provisions of the contract. *Collier v. Employers Nat'l Ins. Co.,* 861 S.W.2d 286, 288 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

▮ In *Collier,* the Fourteenth Court of Appeals considered the same issue—whether a plaintiff can recover under a UM provision for injuries suffered from a drive-by shooting. The plaintiff in Collier was the driver, and he was shot when someone in a passing car fired a shotgun into the car he was driving. 861 S.W.2d at 288. The Fourteenth Court held the meaning of the UM provision in that contract (the same as the contracts here) was to insure against automobile collisions. *Id.* at 289. The court considered a three-part test, set out in 6B John A. Appleman, Insurance Law and Practice § 4317 (Buckley ed. 1979), for construing the "use" requirement of UM coverage as follows:

1. The accident must have arisen out of the inherent nature of the automobile as such;
2. The accident must have arisen within the natural territorial limits of [the] automobile, and the actual use, loading or unloading must not have terminated; and
3. The automobile must not merely contribute to the cause of the condition which produces the injury, but must itself produce the injury.

The Fourteenth Court said:

> The same injury could have been suffered in the same way if the parties had been on foot, on bicycles, or in any other of a number of circumstances. Allowing coverage simply because an automobile provided the site for a criminal assault or provided transportation to the location of a criminal act could lead to absurd and wide-ranging results.

861 S.W.2d at 289.

Tuan Le contends the analysis in *Collier* is wrong because only a "causal relationship" between the vehicle and the incident is required. We disagree with Tuan Le and agree with the Fourteenth Court. Tuan Le's injuries did not arise from the "use" of the car. The gun was the instrumentality that caused Tuan Le's injuries, not the car.

Tuan Le cites several out-of-state opinions that support his position. *See AIG Hawaii Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 851 P.2d 321 (1993); *Willard v. Kelley,* 803 P.2d 1124 (Okla.1990); *Ganiron v. Hawaii Ins. Guar. Ass'n,* 69 Haw. 432, 744 P.2d 1210 (1987); *Government Employees Insurance Company v. Novak,* 453 So.2d 1116 (Fla. 1984). We have considered these cases, but are not persuaded by their reasoning.

We believe the correct analysis was applied in *Collier,* which held the "use" requirement of UM coverage is not satisfied by a drive-by shooting. *Collier,* 861 S.W.2d at 290; *see also Ulrich v. United Servs. Auto Ass'n,* 839 P.2d 942 (Wyo.1992); *Hamidian v. State Farm Fire & Casualty Co.,* 251 Kan. 254, 833 P.2d 1007 (1992); *McIntosh v. State Farm Mut. Ins. Co.,* 488 N.W.2d 476 (Minn. 1992); *Kessler v. Amica Mut. Ins. Co.,* 573 So.2d 476 (La.1991).

We hold Tuan Le's personal injuries did not arise from the "use" of the insured vehicle as required by the UM provision.

## 3. Physical contact requirement

▮ Tuan Le contends the incident did not involve a hit-and-run situation, and therefore, we do not need to consider whether there was direct contact between the uninsured vehicle and Tuan Le's vehicle. We disagree.

This Court recently considered whether a UM policy covers incidents when there is no physical contact between vehicles. In *Mayer,* the plaintiff, who was driving a motorcy-

cle, was forced off the highway by a truck that began to move into his lane. *Mayer,* 870 S.W.2d at 624. The motorcycle flipped over and hit a roadside object. *Id.* The issue that confronted us was whether the plaintiff could recover under his UM insurance policy even though there was no physical contact between the truck and the motorcycle. *Id.* After considering the language of the Insurance Code and the policy, we held they both required physical contact before a party could claim a recovery under the UM provision. *Id.* at 625. We said the policy required that a hit-and-run vehicle "hit" the insured or the vehicle the insured was driving. *Id.* We said the language of the policy should be given the same meaning as the provisions in the Insurance Code requiring physical contact in order to recover. *Id.* We affirmed the trial court's summary judgment for the insurance company.

■ Tuan Le asserts the impact of the bullets against the vehicle satisfies the physical contact requirements in this case. We disagree. An indirect contact can satisfy the physical contact requirement of a UM policy only if it meets the requirements set out in *Latham v. Mountain States Mut. Casualty Co.,* 482 S.W.2d 655, 657 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.). *Mayer,* 870 S.W.2d at 624. In *Latham,* a hit-and-run driver in car A hit car B, causing it to hit car C, which contained the insured. 482 S.W.2d at 656. We held such an indirect contact met the physical contact requirement of the UM policy. *Id.* at 657. Other courts of appeals have held the indirect contact rule does not apply when the unidentified vehicle does not hit any car. *See Republic Ins. Co. v. Stoker,* 867 S.W.2d 74, 77–78 (Tex.App.—El Paso 1993), *rev'd on other grounds,* 903 S.W.2d 338 (Tex.1995); *Williams v. Allstate Ins. Co.,* 849 S.W.2d 859, 861 (Tex.App.—Beaumont 1993, no writ); *Guzman v. Allstate Ins. Co.,* 802 S.W.2d 877, 880 (Tex. App.—Eastland 1991, no writ); *Goen v. Trinity Universal Ins. Co.,* 715 S.W.2d 124, 125 (Tex.App.—Texarkana 1986, no writ).

In *Williams,* the Beaumont Court of Appeals held there was no coverage under the UM provision of an automobile insurance policy when a piece of iron fell from an unidentified truck and the plaintiff's car ran into it. *Williams,* 849 S.W.2d at 860–61. The plaintiff lost control of the car and pulled it over to the side of the interstate. *Id.* at 860. The court reasoned there was no contact between the truck and the car, and therefore the UM provision did not apply. *Id.* at 861.

We hold that a drive-by shooting in which there is no collision does not meet the physical contact requirement set out in the UM provisions of the policies. We hold there is no coverage under the UM provisions of the insurance contracts.

We overrule points of error one and two.

## B. Personal injury protection provisions—State Farm

■ In point of error three, Tuan Le contends the trial court erred in granting summary judgment for State Farm on his PIP claim. Tuan Le contends the Insurance Code does not limit PIP coverage to a "motor vehicle" accident.

The Insurance Code article 5.06–3(b) defines PIP coverage:

"Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest or occupant, up to an amount of $2,500 for each person for payment of all reasonable expenses arising from the accident. . . .

TEX. INS.CODE ANN. art. 5.06–3(b) (Vernon 1981).

State Farm's PIP provision in its insurance policy reads:

We will pay Personal Injury Protection benefits because of bodily injury:

1. resulting from a motor vehicle accident; and

2. sustained by a *covered person.*

"Covered person" as used in the Part means:

1. You or any family member;

 a. while occupying; or

b. when struck by a motor vehicle designed for use mainly on public roads or a trailer of any type.

The policy provision requires the injury to "result from a *motor vehicle accident*" (Emphasis added.) Thus, the policy adds some gloss to the statutory term "the accident."

The issue is whether the legislature intended PIP in an auto liability insurance policy to cover injuries from any accident that happens to occur in a car or only those injuries that result from automobile accidents. Resolution of the issue turns on statutory construction of "the accident." Tuan Le reads "the accident" broadly to encompass any accident that occurs in a motor vehicle. State Farm reads "the accident" narrowly to cover only accidents involving a motor vehicle, rather than all accidents that occur in a motor vehicle.

The Fort Worth Court of Appeals dealt with the same issue in *Berry v. Dairyland County Mut. Ins. Co.*, 534 S.W.2d 428 (Tex. Civ.App.—Fort Worth 1976, no writ). The court held that the statute does not limit the type of accident covered and, if the parties intended by adding the language "in a motor vehicle accident" to narrow the coverage afforded, it would be repugnant to the statute. *Id.* at 431. The court held the additional language void. *Id.* As illustrated by the inclusion of similar language in the current policy provision, the *Berry* decision has not been given much respect.[3] We are not persuaded by the *Berry* decision for both legal and public policy reasons.

### 1. Legal Reason

The insurance policy in *Berry* was different from the one in this case. It provided·

PIP coverage to "any other person who sustains bodily injury, caused by accident, while occupying the insured motor vehicle...." 534 S.W.2d at 431. The policy defined "occupying" as "in or upon or entering into or alighting from." *Id.* at 433. Thus, the policy would have expressly covered another person for the very loss sustained by the insured, Berry, who had injured his leg while getting out of the car. *Id.* The effect of not allowing coverage to the insured would have been to afford the insured less protection than other occupants in the vehicle. *Id.* The court observed that its construction, allowing coverage to Berry, must have been within the intent of the parties. *Id.*

The policy in this case requires that the bodily injury to any covered person, insured or occupant, result from a motor vehicle accident. While this distinction undermines only the second reason given for the decision of the Second Court of Appeals, it provides a legitimate basis for distinguishing *Berry*. The first reason given for the decision in *Berry* is discussed under the policy reason below.

### 2. Policy Reason

The court in *Berry* stated early on that the evidence did not show whether the policy form had been approved by the Board of Insurance Commissioners. 534 S.W.2d at 430. Moreover, the court observed that PIP protection had just been enacted in the Insurance Code within the year preceding Berry's accident. *Id.* at 429.

However, the Board's responsibility for prescribing uniform policy forms for each kind of insurance had been in effect at least

---

**3.** There appear to be five cases which have cited *Berry*.

Two have distinguished *Berry* or found it not controlling. *See McCalla v. State Farm Mut. Auto. Ins. Co.*, 704 S.W.2d 518, 519 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Sterling v. U.S. Fidelity & Guar. Co.*, 555 S.W.2d 889, 890 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

Two have cited *Berry* for the general proposition that when the legislature specifies a particular extent of coverage, an insurance company may not attempt to void or narrow such coverage in abrogation of the statute. *See Uni-*

*gard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1978); *Balderama v. Western Casualty Life Ins. Co.*, 794 S.W.2d 84, 88 (Tex.App.—San Antonio 1990), *rev'd*, 825 S.W.2d 432 (Tex. 1991).

In only one case was *Berry* cited by a party as controlling. *See Flores v. Dairyland County Mut. Ins. Co.*, 595 S.W.2d 893, 894 (Tex.Civ. App.—Eastland 1980, writ ref'd n.r.e.). The Eleventh Court of Appeals ignored *Berry* and instead held that some causal relationship existing between the vehicle and the accident is necessary for PIP coverage. *Id.*

since 1951. *See* TEX. INS.CODE ANN. art. 5.06 (Vernon 1981) (text of article effective until January 1, 1982). Since 1973, the statutory provision for PIP has included the following authorization:

> The State Board of Insurance is hereby authorized to prescribe the form, or forms, of insurance policies, including riders and endorsements, to provide the coverage described in this article. The Board shall also prescribe the premium rates under the provisions of this Subchapter A, Chapter 5, Texas Insurance Code. Provided, however, the foregoing provisions relative to forms and rates shall apply only to coverage written to comply with this article; such provisions shall not apply to other accident or health policies even though they promise indemnity against automobile-connected injuries. Provided further, County Mutual Insurance Companies shall not be subject to the rate making authority herein conferred on the board.

TEX. INS.CODE ANN. art. 5.06—3(f) (Vernon 1981). While the court in *Berry* felt it necessary that there be evidence showing that the policy form had been approved by the Board, the proposition is established as a matter of law by the pertinent statute.

Due deference should be given to the Board's construction of statutory provisions as reflected in policy forms the Board prescribes. *See Reed v. Department of Licensing & Regulation*, 820 S.W.2d 1 (Tex.App.—Austin 1991, no writ). In *Reed*, the Third Court of Appeals stated:

> When the meaning of a statutory provision is unclear, in doubt, or ambiguous, the interpretation placed upon the provision by the agency is entitled to weight. Although not bound by the agency construction of a statute, we should give deference to the statutory interpretation of the agency administering the statute.

*Id.* at 3. The Board has been given the authority by the legislature to prescribe policy forms and premium rates. Its job is to carry out the legislative enactments concern-

ing insurance. It is in the best position to maintain an equilibrium between coverages and premiums.

It is likely that the statewide cost for injuries which happen to occur in a car is higher than the cost of paying for injuries which result from a motor vehicle accident. A change in the scope of coverage will likely cause premiums to be adjusted accordingly. We give deference to the State Board of Insurance and hold that "the accident" for which PIP coverage is allowed is a motor vehicle accident, not any accident which happens to occur in a motor vehicle.[4]

We do not find the Board's construction repugnant to the statute. Within the context of automobile liability insurance, the legislature intended all types of coverage, including liability, uninsured motorist and personal injury protection, to be limited to motor vehicle accident situations. Therefore, when article 5.06—3(b) refers to "the accident," it means the motor vehicle accident for which the legislature created automobile liability insurance. This is consistent with the recent holding in *State Farm v. Peck*, 900 S.W.2d 910 (Tex.App.—Amarillo 1995, no writ) (construing "auto accident" for purposes of liability coverage as not including an injury to an occupant of a car who was bitten by a dog).

We overrule point of error three.

**C. Extracontractual claims**

■ In point of error four, Tuan Le argues the trial court erred in granting summary judgment for Farmers, State Farm, and Allstate on his extra contractual claims for denial of UM benefits and State Farm's denial of PIP benefits. Because we hold that Tuan Le was not entitled to recover under the UM and PIP provisions, the trial court properly granted summary judgment as to Tuan Le's extra contractual claims against Farmers, State Farm, and Allstate arising from the denial of both UM and PIP benefits.

We overrule point of error four.

4. Just as the dissent points out that the legislature has met many times since *Berry* without amending "the accident" to include "automobile," the insurance board has not seen fit to change its policy language in the nearly 20 years since *Berry* was decided. As pointed out above, *Berry* has not received much attention.

**D. Insurance Code provisions—State Farm**

 Tuan Le raises a new point of error in his second amended second motion for rehearing. In his pleadings, Tuan Le asserted a claim against State Farm, Farmers, and Allstate under TEX. INS.CODE ANN. art. 21.55 (Vernon Supp.1996). Tuan Le now contends this Court erred in affirming summary judgment for State Farm on this claim because good faith is not a defense to the statutory penalties for refusal to timely pay an insurance claim. State Farm responds it never moved for summary judgment with respect to this claim, and therefore, the trial court erred in rendering summary judgment on this claim. *See Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993) (granting motion for summary judgment on causes of action not addressed in the motion is reversible error). Therefore, State Farm requests this Court to modify the judgment to reverse and remand the trial court's judgment with respect to the article 21.55 claim against State Farm.

We disagree with both Tuan Le and State Farm. State Farm, Farmers, and Allstate filed various motions for summary judgment. State Farm did not move for summary judgment on Tuan Le's article 21.55 claim. The trial court ruled on the motions for summary judgment with three interlocutory summary judgment orders, none of which contained "Mother Hubbard" clauses or their substantial equivalent. These interlocutory orders do not purport to dispose of Tuan Le's article 21.55 claim against State Farm. However, Tuan Le's remaining claims were disposed of in the final judgment, which was rendered after a trial. The final judgment did not grant Tuan Le relief on his article 21.55 claim against State Farm, and it denied all relief not expressly granted.[5] Tuan Le did not raise error with reference to article 21.55 until his second motion for rehearing. Further, the error is couched in terms of attacking a summary judgment rather than a final judgment after a trial on the merits. We hold Tuan Le waived any error with reference to his article 21.55 claims.

We overrule all points of error in Tuan Le's second amended second motion for rehearing.

We affirm the judgment of the trial court.

The justices who voted for en banc consideration were SCHNEIDER, C.J., and COHEN, WILSON, HEDGES, ANDELL and TAFT, JJ.

HUTSON–DUNN, MIRABAL and O'CONNOR, JJ., voted against en banc consideration.

TAFT, J., joined by SCHNEIDER, C.J., and COHEN, HUTSON–DUNN, WILSON, HEDGES and ANDELL, JJ., filed the en banc opinion.

O'CONNOR, J., dissents.

The original panel to which this case was submitted was composed of OLIVER–PARROTT, former C.J., and O'CONNOR and TAFT, JJ.

MIRABAL, J., did not participate in the en banc opinions.

OLIVER–PARROTT, former C.J., did not participate in the en banc opinions.

O'CONNOR, Justice, dissenting.

I dissent from the majority's resolution of point of error three.

In point of error three, Tuan Le contends the trial court erred in granting summary judgment for State Farm on his PIP claim. Tuan Le contends the Insurance Code does not limit PIP coverage to a "motor vehicle" accident.

The Insurance Code article 5.06–3(b) defines PIP coverage as:

"Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of

---

5. When a judgment, not interlocutory in character, is rendered in a cause regularly set for trial on the merits, without an order for a separate trial of the issues, the finality of the judgment is presumed. *North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 897–98 (Tex.1966); *Winfield v. Daggett,* 775 S.W.2d 431, 433 (Tex.App.— Houston [1st Dist.] 1989, no writ).

the named insured's motor vehicle including a guest or occupant, up to an amount of $2,500 for each person for payment of all reasonable expenses arising from the accident. . . .

State Farm's PIP provision in its insurance policy reads:

We will pay Personal Injury Protection benefits because of bodily injury:

1. resulting from a motor vehicle accident; and

2. sustained by a *covered person.*

"Covered person" as used in the Part means:

1. You or any family member;

 a. while occupying; or

 b. when struck by a motor vehicle designed for use mainly on public roads or a trailer of any type.

In *Berry v. Dairyland County Mut. Ins. Co.*, 534 S.W.2d 428 (Tex.Civ.App.—Fort Worth 1976, no writ), the Fort Worth Court of Appeals considered whether the term "the accident" in the Insurance Code is limited to a motor vehicle accident. In *Berry*, the plaintiff snapped the cartilage in his knee as he twisted his leg to get out of his car. *Id.* at 429. No other cars were involved in the incident. *Id.* The issue on appeal was whether the plaintiff could recover under the PIP provision. *Id.* at 430. The Fort Worth Court of Appeals considered the language of the Insurance Code that required only that the losses sought to be recovered must arise "from the accident" or "as the result of the accident." *Id.* at 431; *see* TEX. INS.CODE art. 5.06–3(b) (1981).

The Fort Worth Court held that even though the policy stated there was coverage for injuries suffered in a motor vehicle accident, the Insurance Code did not require that the injuries result from a collision between two cars. *Id.* at 432–33. The court also noted the intention of the parties was that the named insured be afforded protection while they were occupying the insured automobile. *Id.* The Fort Worth Court reversed the trial court and held there was coverage under the PIP provision. *Id.* at 433–34.[1]

I agree with the *Berry* Court. The Insurance Code does not limit the PIP to an automobile accident. It uses the term "the accident" without any qualifying language, *e.g.*, automobile accident or motor accident. By limiting PIP to injuries arising from an automobile accident and then interpreting that to require a collision between automobiles, the majority rewrites the Insurance Code instead of interpreting it.

I would apply the *Berry* analysis to the facts of this case and hold that Tuan Le's injuries occurred while he was occupying the car.[2] I would hold there is PIP coverage under the policy even though it did not involve a collision.

I would sustain point of error three.

I would reverse that part of State Farm's summary judgment pertaining to its denial of PIP coverage and remand the cause in part.

1. The majority relies on *State Farm v. Peck*, 900 S.W.2d 910 (Tex.App.—Amarillo 1995, no writ), which was a liability case and not a PIP case. In *Peck*, the Amarillo Court considered the meaning of the term "auto accident" and held it refers to situations in which one or more vehicles are involved in some type of collision or near collision with another vehicle, object, or person. *Id.* at 913. The Amarillo Court decided an average person would not consider a dog-bite as an "auto accident." *Id.* Because this is a PIP case, not a liability case, and the Insurance Code PIP provision does not refer to an "auto accident," merely an "accident," the majority is wrong in applying the reasoning of the Amarillo case. The majority

should instead follow the reasoning of the Fort Worth Court in *Berry*.

2. The majority takes issue with the *Berry* analysis and claims the Fort Worth Court unnecessarily narrowed the language of the Insurance Code. The *Berry* Court did not narrow anything. It merely read the term "the accident" to mean an accident and refused to read into it the word "automobile," as does the majority. The legislature has met 10 times since the *Berry* opinion was issued. In none of those legislative sessions did the legislature amend the term "the accident" to include "automobile," as does the majority.