## TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,

v.

### Jeff A. STURROCK, Appellee.

#### No. 09–01–089 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 4, 2001.

Decided Dec. 6, 2001.

As Corrected Feb. 14, 2002.

Tynan Buthod, Amy Douthitt Maddux, Baker Botts, L.L.P., Houston, for appellant.

Sid S. Stover, Seale, Stover & Bisbey, Jasper, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

Jeff A. Sturrock made a claim for personal injury protection ("PIP") benefits for an injury incurred as he exited his pick-up truck. This litigation ensued after his insurer, Texas Farm Bureau Mutual Insurance Company, denied the claim. The trial court found that Sturrock's injuries resulted from a "motor vehicle accident" within the meaning of the insurance policy. After severing Sturrock's bad faith cause of action into a separate suit, the trial court entered judgment for $2,555 plus attorney fees on Sturrock's breach of contract claim. Texas Farm Bureau raises the following issues in its appeal:

Issue one: Sturrock's insurance policy entitles him to personal injury protection coverage only for injuries resulting from a "motor vehicle accident." Sturrock was injured when his foot became entangled when he got out of his pickup. No other vehicle, person, or object was involved. His pickup was stopped and turned off, and no portion of Sturrock's body impacted any portion of the pickup. Using the plain, ordinary meaning of "motor vehicle accident," was Sturrock involved in a motor vehicle accident?

Issue two: Sturrock's insurance policy entitles him to personal injury protection coverage only for injuries resulting from a "motor vehicle accident." Does Insurance Code Article 5.06–3 nevertheless require coverage for an injury that does not result from a "motor vehicle accident"?

These issues concern the Insurance Code article requiring personal injury protection ("PIP") coverage on automobile liability insurance policies: "No automobile liability insurance policy ... covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered ... unless personal injury protection coverage is provided...." TEX. INS. CODE ANN. art. 5.06–3 (Vernon 1981). " 'Personal injury protection' consists of provisions of a motor vehicle liability policy which provide for payment to the named insured ... up to an amount of $2,500 ... for payment of all reasonable expenses arising from the accident...." *Id.* Sturrock's policy requires Texas Farm Bureau to pay personal injury protection benefits because of bodily injury: "1. resulting from a motor vehicle accident; and 2. sustained by a covered person." "Covered person" is defined to include any person occupying the covered auto. The policy states, " 'Occupying' means in, upon, getting in, on, out or off."

The agreed statement of facts submitted to the trial court stipulated, in part: 1) the PIP coverage obligated Texas Farm Bureau to pay benefits because of a bodily injury "resulting from a motor vehicle accident" sustained by a covered person; 2) Sturrock was a covered person; 3) after driving his pick-up, Sturrock parked and turned the ignition off; 4) "Sturrock then turned and opened the door, and as he was exiting the vehicle, his left foot somehow became entangled, and he almost slipped and fell and caught himself, and that is when he felt the burning in his neck and shoulder area. The exiting the vehicle caused him to do that."; 5) "He hung his foot on the raised portion of the door facing on his truck."; 6) "Sturrock somehow injured his neck, shoulder, and upper back as he was getting out of his pick-up." 7) "Sturrock's injury on April 10 was not caused by an impact between any portion of his body and any portion of his pickup." Texas Farm Bureau contends that the incident described in the agreed statement of facts is not an accident for which benefits would be payable under the policy's personal injury protection coverage because it did not involve a collision or near collision between the covered motor vehicle and another vehicle, person or object.

*Berry v. Dairyland County Mut. Ins. Co. of Tex.*, 534 S.W.2d 428, 431 (Tex.Civ. App.—Fort Worth 1976, no writ), held in an appeal from the granting of a plea of privilege that an injury received by the insured while alighting from his vehicle was an "accident" within the meaning of Article 5.06–3 of the Insurance Code. Although the endorsement form utilized by the insurance company on policies like that issued to Berry required that the injury occur in a "motor vehicle accident," the appellate court reasoned that language which would narrow the coverage afforded by Article 5.06–3 would be repugnant to the statute. *Berry*, 534 S.W.2d at 431. The court reasoned that a reasonable construction of the phrase would include "an accident sustained in a motor vehicle while the insured was in the process of alighting therefrom after using same." *Id.* at 433. Since the insured was "occupying" a motor vehicle when he was hurt, the injury was covered. *Id.* The court relied on *Dorsey v. Fidelity Union Casualty Co.*, 52 S.W.2d 775 (Tex.Civ.App.—Waco, 1932, writ dism'd), where medical payments coverage was found when someone was injured by the accidental discharge of a gun being loaded into a vehicle, and *Southern Surety Co. v. Davidson*, 280 S.W. 336 (Tex.Civ. App.—Fort Worth, 1926, no writ), where the insured sprained his ankle when he stepped on a brick as he exited his vehicle.

Later caselaw sheds more light on the issue. The Eastland Court of Appeals distinguished *Berry* on its facts in a PIP case

where the insured closed the door to the vehicle and took four steps before falling. *Flores v. Dairyland County Mut. Ins. Co. of Tex.*, 595 S.W.2d 893, 894 (Tex.Civ. App.—Eastland 1980, writ ref'd n.r.e.). "We interpret Article 5.06–3 to require the necessity of some causal relationship existing between the vehicle and the accident before recovery for injuries sustained in an accident could be made under the personal injury protection coverage provided." *Id.* at 895.

*State Farm Mut. Ins. Co. v. Peck*, 900 S.W.2d 910 (Tex.App.—Amarillo 1995, no writ), involved a claim on an auto liability policy by a passenger bitten by a dog during a trip to the veterinarian. The Amarillo Court of Appeals held the term "auto accident" to be an unambiguous term referring to "situations where one or more vehicles are involved in some type of collision or near collision with another vehicle, object, or person." *Id.* at 913. The court distinguished accidents where the vehicle is involved in some manner from accidents that merely take place in or near an automobile. *Id.*

In holding that the victim of a drive-by shooting was not entitled to PIP benefits, the First Court of Appeals disagreed with *Berry. Le v. Farmers Texas County Mut. Ins. Co.*, 936 S.W.2d 317, 321 (Tex.App.—Houston [1st Dist.] 1996, writ denied). The court stated, "Within the context of automobile liability insurance, the legislature intended all types of coverage, including liability, uninsured motorist and personal injury protection, to be limited to motor vehicle accident situations. Therefore, when article 5.06—3(b) refers to 'the accident,' it means the motor vehicle accident for which the legislature created automobile liability insurance." *Id.* at 324. The court reasoned that the instrumentality that caused the plaintiff's injuries was a gun, not the car. *Id.* at 321. The same

court followed *Le* in a case that involved a fatal car-jacking. *Schulz v. State Farm Mut. Auto. Ins. Co.*, 930 S.W.2d 872, 875 (Tex.App.—Houston [1st Dist.] 1996, no writ).

Recognizing, "courts in almost all cases have determined that an accident need not be a collision," the Texarkana Court of Appeals rejected the analysis employed in *Le* as "superfluous and unsupported dicta." *Mid Century Ins. Co. of Tex. v. Lindsey*, 942 S.W.2d 140, 144 (Tex.App.—Texarkana 1997), *affirmed*, 997 S.W.2d 153 (Tex.1999). On petition for review, the Supreme Court did not discuss the apparent conflict between the cases, but employed a fresh analysis after considering how the issue had been addressed in other jurisdictions. *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153 (Tex.1999). *Lindsey* involved the underinsured motorist coverage in a case where a boy climbing in the rear window of a parked pickup dislodged a shotgun, causing it to discharge buckshot, which struck a person sitting in another parked car. *Id.* at 154. The court assumed that the term "accident" required an "auto accident," but nevertheless found the injuries were caused by an accident within the meaning of the policy. *Id.* at 155–56.

In *Lindsey*, the Supreme Court discussed its earlier decision in *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex.1997), which held that a drive-by shooting was not an "auto accident" giving rise to a duty to defend under the policy. *Lindsey*, 997 S.W.2d at 155. The court acknowledged that the term "auto accident" refers to situations where one or more vehicles are "involved" with another vehicle, object, or person. *Id.* (quoting *Griffin*, 955 S.W.2d at 83, and *Peck*, 900 S.W.2d at 913). The court reasoned, "Nothing in the language or holding of either case [*Griffin* and *Peck*] suggests

that an 'auto accident' requires a collision or excludes occurrences like the one in this case." *Id.* at 156. The court reasoned that for liability to "arise out of" the use of a motor vehicle, "a causal connection or relation must exist between the accident or injury and the use of the motor vehicle." *Id.* at 156. The court adopted the following test:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Id.* at 157 (citing 8 COUCH ON INSURANCE § 119.37, at 119–56 (1997) and 6B JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE (Buckley ed.) § 4317, at 367–69 (1979)).

The cases here cited address several different liability provisions of motor vehicle insurance policies. Ultimately, the primary distinction is between those cases where the vehicle is only incidentally involved and provides the "mere situs" for an incident that could have occurred anywhere, and those cases where the injury-producing act involved the use of a vehicle as a vehicle. In *Lindsey*, the boy's purpose was to gain entry to the truck and his contact with the gun was entirely inadvertent. *Id.* at 158. The boy's efforts to enter the vehicle caused the gun to discharge. *Id.*

■ The inherent nature of a pickup truck is an instrument of conveyance, the use of which necessitates both mounting and dismounting. Sturrock was engaged in the process of exiting the truck when his foot got caught on a part of the truck itself. No intervening instrumentality disrupted the causal chain between the use of the vehicle as a vehicle and the injury resulting from that use.

■ Texas Farm Bureau argues that "auto accident" requires a collision or near collision between objects. We note that "collision" is defined in the property damage portion of the policy, and the liability portion of the policy is not limited to "collision." Viewing the policy as a whole, the term "motor vehicle accident" does not necessitate any physical impact, provided the facts demonstrate causation between the use of the vehicle and the accidental injury incurred by the covered person. Had the vehicle been moving, and had Sturrock been dragged along the ground because his foot was hung up on the door, there would be no impact between the person and the vehicle, but clearly the injury would have been "produced" by the vehicle. Here, the pickup was stationary, but Sturrock was still actively engaged in the act of using the truck as a means of transportation from one place to another.

Accepting Texas Farm Bureau's premise that the policy term "motor vehicle accident" may be construed to require more than "accident," we hold that, consistent with the Supreme Court's interpretation of auto accidents, the event that resulted in Sturrock's injury was a "motor vehicle accident" within the meaning of his automobile policy. Issues one and two are overruled. The judgment is affirmed.

AFFIRMED.

DAVID B. GAULTNEY, Justice, dissenting.

I respectfully dissent. In *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex.1997), the Texas Supreme Court held that the term "auto accident" is unambiguous and approved

the following definition used by the Amarillo Court of Appeals:

"The term 'auto accident' refers to situations where one or more vehicles are involved with another vehicle, object, or person." *State Farm Mut. Ins. Co. v. Peck,* 900 S.W.2d 910, 913 (Tex.App.—Amarillo 1995, no writ).

Similarly, the term "motor vehicle accident" is unambiguous and, like the term "auto accident," refers to situations where one or more vehicles are involved with another vehicle, object, or person.

Tripping while getting out of a vehicle is not what comes to mind when one hears the term "motor vehicle accident" or "auto accident." Sturrock admitted as much in response to appellant's request for admission when he stated: "Admit I was not involved in an [sic] 'motor vehicle accident', but I was involved in an accident involving a motor vehicle."

I believe this case is governed by *Griffin.* I would reverse and render judgment that the injuries here did not result from a motor vehicle accident.