Rick **COLLIER**, Appellant,

v.

**EMPLOYERS NATIONAL INSURANCE COMPANY, Appellee.**

No. C14–92–01047–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 9, 1993.

Rehearing Denied Oct. 14, 1993.

Dora L. Bonner, Clute, for appellant.

James D. Ebanks, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

ROBERTSON, Justice.

Appellant sued appellee, seeking to recover uninsured motorist benefits for injuries he sustained when a passing car fired a shotgun into his vehicle.  Appellee moved for summary judgment, arguing that appellant's

claim did not fall within the policy's uninsured motorist coverage. The trial court granted appellee's summary judgment motion and denied appellant's cross-motion for summary judgment. We affirm.

While appellant, Rick Collier, was driving the Mustang automobile of a friend in the Hermann Park area of Houston, Texas, an unidentified vehicle pulled alongside the Mustang and fired two shots at it. Collier sustained injuries from the shots, and he seeks to recover under the uninsured motorist provision of the policy—issued by Employer's National Insurance Company (ENIC)—that his friend held on the Mustang. The two vehicles never collided, and Collier's injuries resulted solely from the gunshots.

■■■ On appeal, we determine whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Appellant must also show that each independent ground asserted in appellee's summary judgment motion is insufficient to support summary judgment. *See Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79 (Tex.1989). Appellee's summary judgment motion contains two supporting arguments; however, the trial court's order does not disclose the rationale upon which the judge relied. If we find either of appellee's arguments to be sound, we will affirm the trial court's decision. *See Rogers*, 772 S.W.2d at 79.

The insurance policy covering the Mustang and its occupants contains the following uninsured motorist coverage agreement:

We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by a **covered person**, or **property damage**, caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

. . . . .

"**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type,

1. To which no liability bond or policy applies at the time of the accident.
2. Which is a hit and run vehicle whose operator or owner cannot be identified and which <u>hits</u>:
   a. you or any **family member;**
   b. a vehicle which you or any **family member** are **occupying;** or
   c. **your covered auto.** (underscoring added).

In its first argument, ENIC claims the requirement that "the damages must arise out of the ... use of the uninsured motor vehicle," is not satisfied. For two reasons, we agree.

■■ A key rule of construction for insurance contracts maintains that all parts of the contract should be taken together to best implement the intention of the parties. *Royal Indemnity Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex.1965). In all contract disputes, words that are subject to more than one interpretation are defined so that they are harmonious with, rather than repugnant to, the other provisions of the contract. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 197 (Tex.1962); *City of Bunker Hill Village v. Memorial Villages Water Auth.*, 809 S.W.2d 309, 311 (Tex. App.—Houston [14th Dist.] 1991, no writ).

■■ We are faced with the question of how broadly the word "use" should be defined. Collier claims it should encompass almost any act which occurs in, on, or around the vehicle. ENIC, on the other hand, argues that "use" refers to use of the automobile, as an automobile. After considering several other provisions of the contract, we agree with ENIC.

■■ For example, part B–2 of the policy states "covered person" is defined as "you or any family member; while occupying; or when struck by; a motor vehicle...." Similarly, the same provision states that "[w]e will pay Personal Injury Protection benefits because of bodily injury: resulting from a motor vehicle accident...." Part C, in defining the eligibility requirements for unin-

sured motorist coverage, states that an "uninsured motor vehicle" is one that (1) has no insurance, or (2) is an unidentifiable hit and run vehicle which "hits: you or any family member; a vehicle which you or any family member are occupying; or your covered auto."

Taken together, these provisions evidence the parties' intention to insure against automobile *collisions.* The policy does not purport to protect the insured against criminal assaults or other criminal acts levied against the vehicle's occupants. We doubt that the risk of bodily injury arising from a criminal assault is the type of risk that two parties to an automobile liability insurance contract normally contemplate.

The second ground on which we affirm the trial court's interpretation of the "arising out of the use" clause is an analysis of that section found in Appleman's treatise on insurance law. Appleman provides a three-part test for construing the "use" requirement of uninsured motorist coverage as follows:

1. The accident must have arisen out of the inherent nature of the automobile, as such;

2. The accident must have arisen within the natural territorial limits of [the] automobile, and the actual use, loading, or unloading must not have terminated; and

3. The automobile must not merely contribute to the cause of the condition which produces the injury, but must itself produce the injury.

6B JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE (Buckley ed.) § 4317 (1979).

█ Clearly, the attack to which Collier was subjected did not arise out of the inherent nature of the automobile. The same injury could have been suffered in the same way if the parties had been on foot, on bicycles, or in any other of a number of circumstances. Allowing coverage simply because an automobile provided the site for a criminal assault or provided transportation to the location of a criminal act could lead to absurd and wide-ranging results. The shotgun, not the uninsured vehicle, was the in-strument that caused Collier's injury; therefore, we hold that the injuries did not arise out of the use of the uninsured vehicle.

Our decision is in accord with several courts in other jurisdictions that have agreed with this interpretation of the "arising out of the use" clause.· *See, e.g., Wausau Underwriters Ins. Co. v. Howser,* 727 F.Supp. 999, 1003 (D.S.C.1990) (holding that shooting attack and resulting injuries did not arise out of use of vehicle because attack was not foreseeably identifiable with normal use of vehicle); *Coleman v. Sanford,* 521 So.2d 876, 877 (Miss.1988) (holding that voluntary, deliberate, independent act such as a shooting renders vehicle's involvement incidental); *Florida Farm Bureau Ins. Co. v. Shaffer,* 391 So.2d 216, 217–18 (Fla.Dist.Ct.App.1981) (holding that criminal assault is not normally contemplated by two parties to an automobile insurance contract; therefore, it does not arise out of use of automobile).

*But see Nationwide Mut. Ins. Co. v. Munoz,* 199 Cal.App.3d 1076, 245 Cal.Rptr. 324, 325–28 (Cal.Ct.App.2d 1988), *review den'd but orig. op. ordered not published* (1988) (holding that drive-by shooting injury arose out of use of uninsured vehicle); *Fidelity and Casualty Co. of New York v. Lott,* 273 F.2d 500 (5th Cir.1960) (holding that injury sustained during use of vehicle as support for deer rifle while hunting arose out of use of vehicle where slug deflected through roof killing other hunter).

Other courts have held that assaults and criminal acts under similar circumstances do not "arise out of the use" of the uninsured vehicle. *Cf. Government Employees Ins. Co. v. Melton,* 357 F.Supp. 416 (D.S.C.1972) (striking individual with coke bottle thrown from moving vehicle does not arise out of use of vehicle); *McDonald v. Great Am. Ins. Co.,* 224 F.Supp. 369, 372–73 (D.R.I.1963) (throwing "cherry bomb" from moving vehicle into other vehicle does not arise out of use of vehicle); *Farm Bureau Mut. Ins. Co. v. Evans,* 7 Kan.App.2d 60, 637 P.2d 491, 493–94 (1981) (throwing firecracker from vehicle does not arise out of use of vehicle); *Mazon v. Farmers Ins. Exch.,* 107 Ariz. 601, 602–03, 491 P.2d 455, 456–57 (1971) (throwing rock from vehicle into another vehicle does not

arise out of use of vehicle). *But see, National American Ins. Co. v. Insurance Co. of North America*, 74 Cal.App.3d 565, 140 Cal. Rptr. 828 (1977) (throwing egg from vehicle arose from use of vehicle, because vehicle's speed significantly contributed to egg's velocity).

We hold that the term "arising out of the use of the uninsured motor vehicle" does not encompass drive by shootings and shootings from moving vehicles. While this holding alone is sufficient to sustain the trial court's grant of summary judgment, we also agree with ENIC's second summary judgment argument. *See Rogers*, 772 S.W.2d at 79. ENIC claims that Collier failed to satisfy the requirement that the uninsured motorist "hit," or made actual physical contact with, the vehicle in which Collier was riding.

The insurance policy on the Mustang states:

"**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type,

1.  To which no liability bond or policy applies at the time of the accident.

2.  Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

    a.  you or any **family member;**

    b.  a vehicle which you or any **family member** are **occupying;** or

    c.  **your covered auto.** (underscoring added).

The Texas Insurance Code provides additional insight into this provision:

The portion of a policy form adopted under Article 5.06 of this code to provide coverage under this article shall require that in order for the insured to recover under the uninsured motorist coverages where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, *actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured.*

TEX.INS.CODE ANN. art. 5.06–1(2)(d) (Vernon Supp.1993).

Succinctly stated, to recover under uninsured motorist coverage, the insured must show that his injury resulted from actual, direct physical contact with the uninsured vehicle or that the uninsured vehicle created an uninterrupted chain of physical events between other vehicles that ultimately resulted in the insured's injury. *See Williams v. Allstate Ins. Co.*, 849 S.W.2d 859 (Tex.App.—Beaumont 1993, n.w.h.); *Goen v. Trinity Univ. Ins. Co. of Kansas, Inc.*, 715 S.W.2d 124 (Tex.App.—Texarkana 1986, no writ). No direct physical contact between the vehicles occurred. Appellant argues, however, that they made indirect contact via the shotgun blast.

The indirect contact rule allows one to recover when uninsured vehicle A collides with vehicle B, propelling it into insured vehicle C. *Latham v. Mountain States Mut. Casualty Co.*, 482 S.W.2d 655 (Tex.Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.). The rule is inapplicable when an unidentified vehicle does not hit any car. *Guzman v. Allstate Ins. Co.*, 802 S.W.2d 877 (Tex.App.—Eastland 1991, no writ); *Goen*, 715 S.W.2d at 124. Consequently, we agree with appellee's second ground for summary judgment and hold, under the facts of this case, that the requisite physical contact did not occur between the uninsured vehicle and the insured's vehicle.

Accordingly, we affirm the trial court's decision to grant ENIC's motion for summary judgment and to deny Collier's motion for summary judgment.

BOWERS, J., not participating.