**Gerald WHITEHEAD, Rose Whitehead, Starlette Whitehead, and Lesa Taylor–Shivers, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

No. 06–97–00009–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 24, 1997.

Decided July 31, 1997.

Opinion on Rehearing Sept. 16, 1997.

Rehearing Overruled Sept. 16, 1997.

James A. Holmes, Wellborn, Houston, Adkison, Henderson, for appellant.

Scott Patrick Stolley, Thompson & Knight, P.C., Dallas, Paul H. Gilliam, Ramey & Flock, Tyler, for appellee.

Before CORNELIUS, C.J., and GRANT and CHADICK,* JJ.

## OPINION

GRANT, Justice.

Gerald, Rose, and Starlette Whitehead and Lesa Taylor–Shivers appeal from the trial court's refusal to award attorney's fees in an insurance dispute tried to the court. State Farm Insurance Company cross-appeals, contending that the court erred by awarding benefits under the uninsured/underinsured motorist provision of the insurance contract.

State Farm contends that the evidence does not support any finding of liability based on the uninsured motorist provision of the automobile insurance and that the trial court erred by refusing to find the Whiteheads and Taylor–Shivers collaterally estopped from claiming that the acts of the Hawkinses triggered coverage.

Kevin Hawkins left a nightclub after closing time, when he was picked up by his brother, Howard Hawkins, Jr., who was driving their father's van. Kevin Hawkins saw an individual with whom he believed he had previously had a quarrel riding as a passenger in a pickup truck. He instructed his brother to chase the truck because he needed to "get" someone in the truck, and then said he was going to shoot him. Hawkins took a pistol belonging to an uncle out from under the seat of the van, and as the van pulled alongside the truck, he fired eight shots toward the truck. In the process, he killed the driver, Brent Taylor. The truck went out of

control and hit a bridge stanchion. Starlette Whitehead, a passenger in the pickup truck, was severely injured in the crash. Both vehicles were insured by State Farm, with the policies being issued to the van driver's father (as well as the shooter's father) and to the deceased driver.

The present lawsuit was filed by Taylor's mother, Whitehead, and Whitehead's parents against the owner of the van, Howard Hawkins, Sr., the driver of the van, Howard Hawkins, Jr., the shooter, Kevin Hawkins, a passenger in the van, Damon Wright, and State Farm as the insurer both of Hawkins and of the victim, Taylor. After various severances, the present case against State Farm went to trial before the court, based largely on stipulated evidence.

Findings of fact and conclusions of law from the previous trial on liability of the parties were introduced into evidence without objection. We must emphasize that these findings of fact and conclusions of law are to be considered only as evidence and not as findings and conclusions made by the trial court in the present case. In the present case, findings of fact and conclusions of law were timely requested, and although a reminder was filed by State Farm, no findings of fact and conclusions of law were filed. Because the trial court's duty to file findings of fact and conclusions of law is mandatory, the failure to respond when all requests have been properly made is presumed harmful, unless the record before the appellate court affirmatively shows the complaining party has suffered no injury.[1] However, in the present case, no complaint about this failure was made on appeal. Therefore, we shall not review this matter with the presumption of harm, but rather treat the record before us as one filed without findings of fact and conclusions of law. In their absence, the judgment implies all necessary findings of fact necessary to support it, providing that the proposition is one raised by the pleadings and supported by the evidence, and that the judge's decision can be sustained on any theory that is consistent with the evidence

---

* T.C. Chadick, Justice, Supreme Court of Texas, Retired, Sitting by Assignment.

1. *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989).

and applicable law, considering only the evidence favorable to the decision.[2]

We now quote from the findings of fact and conclusions of law from the previous trial for evidentiary consideration. Because we are going to focus first upon evidence concerning the driver of the uninsured vehicle, we quote an excerpt from the findings of fact concerning Howard Hawkins, Jr.:

(1) Defendant HOWARD HAWKINS, JR. operated the HAWKINS vehicle on the evening of July 10, 1994.

(2) Defendant HOWARD HAWKINS, JR. knew, or in the exercise of ordinary care should have known, that a firearm was kept under the seat of the HAWKINS vehicle on the evening of July 10, 1994.

(3) Defendant HOWARD HAWKINS, JR. used the HAWKINS vehicle to pursue and overtake the TAYLOR vehicle on the evening of July 10, 1994.

(4) Defendant HOWARD HAWKINS, JR. placed the HAWKINS vehicle in close proximity to the TAYLOR vehicle when he knew of the intent of KEVIN HAWKINS to discharge the firearm into the TAYLOR vehicle.

(5) Defendant HOWARD HAWKINS, JR. knew or, in the exercise of ordinary care should have known, that his pursuit and overtaking of the TAYLOR vehicle would result in personal injuries to some or all of the TAYLOR vehicle's occupants.

(6) Defendant HOWARD HAWKINS, JR. failed to use ordinary care in taking evasive action in the operation of the HAWKINS vehicle when he knew or, in the exercise of ordinary care, should have known that Defendant KEVIN HAWKINS intended to discharge the firearm into the TAYLOR vehicle.

(7) Defendant HOWARD HAWKINS, JR. did not intentionally cause bodily injury to Plaintiffs, Intervenor, or BRENT TAYLOR on July 10, 1994.

The only challenges made by State Farm's points of error are that the trial court erred in concluding that liability arose out of the

ownership, maintenance, or use of the Hawkins' vehicle and that the Whiteheads and Taylor–Shivers were collaterally estopped from claims that the actions of Hawkins, Sr. and Hawkins, Jr. were the causal factors that triggered the uninsured motorist coverage.

There was a stipulation of facts that included the following:

(1) On July 10, 1994, in Longview, Texas, Brent Taylor was operating a 1993 Nissan pick-up truck ("the Taylor vehicle"), in which Starlette Whitehead was a passenger, when Kevin B. Hawkins, occupying a 1986 Ford Aerostar van ("the Hawkins vehicle"), intentionally fired one or more gunshots at the Taylor vehicle. Brent Taylor was hit by a single gunshot and died. After being shot, Brent Taylor lost control of the Taylor vehicle causing it to collide with a concrete structure and resulting in bodily injuries to Starlette Whitehead. Starlette Whitehead was not hit by gunfire. During the course of this incident, there was no physical contact between the Taylor vehicle and the Hawkins vehicle.

(2) The shooting of Brent Taylor by Kevin B. Hawkins was not provoked by, nor could it have reasonably been foreseen by, Brent Taylor or Starlette Whitehead.

. . . .

(7) Intervenor Lesa Taylor–Shivers is the natural mother of Brent Taylor and the Administratrix of his estate. As a result of the shooting of Brent Taylor, as described in paragraph (1) above, Brent Taylor and Lesa Taylor–Shivers sustained combined damages exceeding $40,000. Such damages were proximately caused by the conduct, as set out in this Stipulation of Facts, of one or more of the following persons: Howard Hawkins, Jr., Kevin B. Hawkins, and Howard Hawkins, Sr. There were no other proximate causes of such damages. The conduct of Howard Hawkins, Jr. and Howard Hawkins, Sr. was not intended to cause the injuries to Brent Taylor or Starlette Whitehead.

The overarching issue in this case is whether this negligent conduct was covered

**2.** *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

under the uninsured motorist insurance policy. The policy provision at issue reads as follows:

PART C UNINSURED/UNDERINSURED MOTORISTS COVERAGE.

INSURING AGREEMENT

A. We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury sustained by a *covered person, or property damage,* caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *uninsured motor vehicle.*

Any judgment for damages arising out of a suit brought without our consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us.

State Farm first contends that the $20,000 award made to the Whiteheads and the $20,000 award made to Taylor–Shivers are improper because this situation is not covered by the uninsured motorist provision of the insurance policy between it and Taylor, the owner of the pickup truck. State Farm argues that injuries resulting from the shooting were not covered because the policy only covers "use" of the vehicle as a vehicle and not when used for other purposes, such as a gun platform.

■■■ There are a number of concepts that merge together in our review of this case. The starting point is the rule that insurance policies must be interpreted as contracts, with the courts striving to give effect to the written expression of the parties' intent.[3] If the policy is found to be ambiguous, the court must construe its language in favor of providing coverage for the insured.[4]

The insurance contract defines a covered event as "bodily injury ... caused by an accident [arising out of the] use of the uninsured motor vehicle." In *National Union Fire Insurance Co. v. Merchants Fast Motor Lines,*[5] the plaintiff alleged that a driver for the company accidentally fired a pistol, killing a passenger in another vehicle. The insurer refused to defend. The court's holding was procedural in nature based upon the insufficiency of the pleading. The court said that the allegations did not suggest that the injury was caused by an accident resulting from the use of a covered automobile. In the present case, the pleadings have not been challenged. In the *Merchants* case, the Court stated that the mere fact that an automobile is the situs of an accident is not enough to establish the necessary nexus between the use and the accident to warrant the conclusion that the accident resulted from such use.[6]

The Houston Courts of Appeals have discussed drive-by shootings in two cases. In *Collier v. Employers National Insurance Co.,*[7] the court held that uninsured motorist coverage did not apply because the parties' intent was to insure against automotive collisions, not against other criminal acts. This is a rather narrow interpretation of the phrase "arising out of the use." There was also considerable discussion of the lack of physical contact, but this is only applicable under uninsured motorist coverage when the owner/operator of the other vehicle is unknown, and thus, does not apply to the present case.[8] The case of *Van Le v. Farmers Texas County Mutual Insurance Co.,*[9] also involved a drive-by shooting by an unknown assailant. The court reached the same conclusion as the court in the *Collier* case concerning the interpretation of the term "use."

---

3. *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995).

4. *Id.; Puckett v. U.S. Fire Ins.,* 678 S.W.2d 936, 938 (Tex.1984).

5. 939 S.W.2d 139, 141–42 (Tex.1997).

6. 939 S.W.2d at 142.

7. 861 S.W.2d 286 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

8. Tex. Ins.Code Ann. art. 5.06–1(2)(d) (Vernon Supp.1997).

9. 936 S.W.2d 317 (Tex.App.-Houston [1st Dist.] 1996, writ denied).

We discussed the standards set out by the Houston courts in our opinion in *Mid Century Insurance Co. v. Lindsey*,[10] but did not apply them.

The term "use" is a type of catch-all term not limited to "ordinary use," and any exercise of control over the vehicle constitutes a use.[11] Thus, the fact that the van was used as a moving gun platform does not exclude the possibility of liability under the terms of this portion of the policy. The van was used to overtake the victim's vehicle and to give the shooter an opportunity to fire into the other vehicle. This negligence by the driver when he was aware of the situation and the intent of the shooter was a use of the vehicle and would fall within the meaning of the term *use* within the policy.

State Farm raises an additional question of whether an accident occurred. There was no physical contact between the van and the pickup truck; thus, any accident was necessarily the result of the shooting spree Hawkins intentionally conducted. In *Republic National Life Insurance Co. v. Heyward*,[12] the Court reviewed a situation where an insured was murdered. The insurer refused to pay, contending that the death was not "accidental." The Court applied the *Hutcherson*[13] test, which states that the test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who commits the act causing injury, but rather from the viewpoint of the insured.[14]

This rule was recently considered in *Trinity Universal Insurance Co. v. Cowan*.[15] The Texas Supreme Court did not overrule or do away with the rule. In *Trinity Universal*, the Court explained that when an intentional act is done by the insured and it causes an unexpected result, it is not an accident. However, this does not apply in the same way when the insured is not the actor, but the victim of another's act, as in the present case.[16] Within its discussion, the Court stated, the intentional clause in the policy applies to intentional acts of the insured, which is not applicable to the facts of the present case. Thus, in this case, although the act of shooting was intentionally done, it constitutes an accident as to the victims.

We conclude that the language of the policy does not exclude coverage of the driver of the van in this situation. We next address the contention that the evidence does not support the finding of liability under the policy.

State Farm contends that regardless of what formulation this court may use when interpreting the contract, proof of causation must be shown. The main support for its position is *National Union Fire Insurance Co.*[17] As previously noted, that case involved an accidental shooting by a truck driver of a passenger in another vehicle. The Court quoted a portion of an ALR article[18] stating that "The cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle ... and where such causal connection or relation is absent, coverage will be denied." The Court then went on to state that the facts alleged do not suggest any causal relationship between *the truck's operation* and *the victim's injury*. The Court did not, however, specify any particular nature or level of causation that would be required to support liability.

10. 942 S.W.2d 140 (Tex.App.-Texarkana 1997, n.w.h.).

11. *Id.*

12. 536 S.W.2d 549 (Tex.1976).

13. *Hutcherson v. Sovereign Camp, W.O.W.*, 112 Tex. 551, 251 S.W. 491 (1923).

14. At the time of the *Heyward* opinion, there was a difference in policy interpretation based upon whether the policy spoke in terms of "accidental injuries" or "injuries effected through accidental means."

15. 945 S.W.2d 819 (Tex.1997).

16. 945 S.W.2d 819.

17. 939 S.W.2d at 142.

18. Larry D. Schaefer, Annotation, *Automobile Liability Insurance: What are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle*, 15 A.L.R.4th 10, 17 (1982).

State Farm relies upon cases from other jurisdictions, centering primarily upon the idea that the causal connection must be a part of the inherent nature of the vehicle-a sort of natural consequences test, but emphasizing that "arising out of the use" cannot equate to "while using."[19] We have previously discussed *Collier* and *Van Le*. In *Mid Century*[20] we considered the phrase "arising out of the use" as a broad statement not burdened with the restrictions added by some courts and not requiring proximate cause.

This does not eliminate a requirement of causal connection. In the present case, the elements of proximate cause are presented by the evidence, both by cause in fact and foreseeability. The fact situation in the present case contains a stronger element of foreseeability than any of the cases cited. In the present case, there is testimony from the driver of the van that he anticipated the conduct of the passenger. The crime can be a cause of harm, but when the party charged with negligence realized or should have realized the likelihood that such a situation might be created and that a third person might avail himself of the opportunity to commit such a crime, the negligent party may be held liable.[21] An intervening action of a third party will not excuse the wrongdoer of a foreseeable act. Thus, the foreseeability in the present case negates the shooting being an intervening cause. Cause in fact is satisfied by showing that an act or omission was a substantial factor in bringing about an injury and without which no harm could have occurred.

A causal chain is adequately shown by Hawkins' negligent use of the vehicle when chasing after the victim. The same use of the vehicle also precipitated the crash that severely injured Whitehead. The causal connection is clearly adequate to show liability in connection with her injury because it is also foreseeable that shooting at the driver of the vehicle could ultimately result in the crash of the vehicle.

In summary, there is evidence that the driver was fully aware that his brother intended to shoot into the pickup truck that the driver was chasing. He was using the van to chase the truck so this could occur. His negligence was not superceded by his brother's foreseeable intentional acts, and although the van itself did not cause the injury and this is not the normal use of a motor vehicle, it was clearly the tool used to achieve an anticipated result. We find the driver's negligence was a concurrent cause of the injury. Because of this finding, we do not address the alleged negligence of the owner of the vehicle or the shooter.

■ State Farm also contends that the Legislature did not intend for this type of coverage to reach intentional car-to-car shootings, because uninsured motorist coverage is a substitute for the liability insurance that the other motorist should have had. Therefore, if the liability insurance actually owned by the other motorist would not cover the act, the substitute should not cover the act either. This would be a simple question if the language contained in these different portions of the policy were consistent. It is not. Liability coverage is provided as follows:

PART A–LIABILITY COVERAGE
INSURING AGREEMENT

A. We will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident. . . .

. . . .

EXCLUSIONS

A. We do not provide Liability Coverage for any person:

---

**19.** *Roberts v. Grisham*, 487 So.2d 836, 839 (Miss. 1986), is cited as an example of such reasoning, where one person drove his car to meet another person, and after a conversation, the other person got out of his car, walked up to the first person, and shot him. This was found to be an intervening cause which broke the use sequence of the automobile.

**20.** 942 S.W.2d 140.

**21.** *See Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985); *Berry Property Management v. Bliskey*, 850 S.W.2d 644, 656 (Tex.App.-Corpus Christi 1993, writ dism'd by agr.); *Northwest Mall v. Lubri–Lon International*, 681 S.W.2d 797 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).

1. Who intentionally causes bodily injury. . . .

The language clearly refers to an auto accident, and its much more specific terminology does not provide the same coverage as the uninsured motorist provision previously quoted. State Farm argues that the coverage provided by the uninsured motorist provision should be bound to the limits of the basic liability insurance that it was designed to replace, but such a legislative intent is not reflected in the language of the policy.

Also, as we noted in *Mid Century*, there is no real indication of Texas legislative intent in this area. State Farm's supporting authority for this position comes largely from reasoned decisions by the judiciary in other jurisdictions with similar statutes. We will not import such reasoning into Texas statutory interpretation, especially when the contract itself is clearly written otherwise. While the initial purpose of the statute provided for uninsured, and later underinsured, motorist coverage and was to provide insurance coverage for the person receiving damages from the conduct of the owners or operators of an uninsured or underinsured motor vehicle, the statutory language does not limit the coverage to the amount of liability insurance coverage that the offending vehicle should have been carrying. Instead, the Act speaks in terms of the protection of persons who are "legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles." [22] This entitlement of damages does not limit the damages to the amount that a policy owner would have received from the liability policy of the negligent driver if the driver had carried liability insurance.

The Whiteheads and Taylor–Shivers, the insureds, contend that the trial court erred by denying their request for an award of attorney's fees. The insureds made the claim at trial under Section 38.001 of the Texas Civil Practice and Remedies Code,[23] which provides that attorney's fees are recoverable for a suit on breach of contract. Section 38.006 provides that Chapter 38 does not apply to a contract issued by an insurer that is subject to Article 3.62 of the Insurance Code, Chapter 9 of the Insurance Code, Article 21.21 of the Insurance Code or Article 21.21–2 of the Insurance Code.[24] The statute spells out a number of exceptions in contract cases in which other statutes provide for attorney's fees. The question that arises in this case is whether these exceptions apply so as to deny an insured litigant attorney's fees in a contract dispute with the insurer. We shall not address this issue because of our disposition concerning the requirement for a presentment of the claim to the opposing party as required by Section 38.002.[25]

The insureds take the position that they are entitled to attorney's fees stating that they made a proper timely demand, but they made no reference in the record reflecting that such a demand was made. State Farm disputes the insured's statement and says that a proper and timely presentment of the claim was not made. We have reviewed the record without benefit of a cite to any evidence of a demand, specifically reviewing testimony concerning attorney's fees, and we have found no evidence that a demand was made as required by the statute. There are a number of cases in Texas stating that the filing of suit does not constitute the presentment of a claim for purposes of recovering attorney's fees in a contract action.[26]

To recover attorney's fees in a breach of contract suit, the plaintiff bears the burden of pleading and proving she made the presentment of the claim to the opposing party.[27] Without proof of this required element for recovery of attorney's fees for con-

---

**22.** *See* TEX. INS. CODE ANN. art. 5.06–1 (Vernon 1981 & Supp.1997).

**23.** TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1997).

**24.** TEX. CIV. PRAC. & REM. CODE ANN. § 38.006 (Vernon 1997).

**25.** TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (Vernon 1997).

**26.** *See Jim Howe Homes, Inc. v. Rogers,* 818 S.W.2d 901 (Tex.App.-Austin 1991, no writ).

**27.** *Id.*

tract, we must sustain the trial court's action in refusing to award attorney's fees.

The judgment of the trial court is affirmed.

ROSS, J., not participating.

## ON MOTION FOR REHEARING

In their motion on rehearing, appellants have provided this Court with a cite to a trial exhibit showing a presentment to State Farm. In that document, Starlette Whitehead made demand of the policy limits of Brent Taylor's underinsured motorist coverage in settlement of her claim. The letter was mailed February 10, 1995, and no payment or offer was made within the thirty days following that date.

As previously set out in our opinion, the judgment awarded $20,000 to the Whiteheads (Starlette and her parents) on their suit against State Farm based upon the underinsured motorist provision of Taylor's policy. It also awarded $20,000 to Taylor's mother, Lesa Taylor–Shivers, on her suit (as intervenor) against State Farm based upon that same provision.

■ Counsel has not directed us to any presentment of a claim by Taylor–Shivers. Because any recovery by Starlette Whitehead's parents was predicated upon Starlette's claim, we find the presentment by her individually to be sufficient to also act as presentment of a claim by her parents for recovery under the policy.

The Whiteheads and Taylor–Shivers contend in their appeal that the trial court erred by denying their request for attorney's fees. They did not request findings of fact or conclusions of law; thus, the judgment implies all necessary findings of fact to support it are present, provided that the proposition is one raised by the pleadings and supported by the evidence, and that the judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision.[28]

■ The insureds made the claim at trial under Section 38.001(8) of Texas Civil Practice and Remedies Code, which provides that attorney's fees are recoverable for a suit on breach of contract. Section 38.006 provides that Chapter 38 does not apply to a contract issued by an insurer that is subject to Article 3.62 of the Insurance Code, Chapter 9 of the Insurance Code, Article 21.21 of the Insurance Code, or Article 21.21–2 of the Insurance Code. The insurer, State Farm, argues that this means that attorney's fees are available in a suit against an insurer only in the specifically enumerated instances, and not in a straight suit on contract.

This section, however, has been held to apply only if attorney's fees are actually available under the relief sought in the chapters listed, as shown by the discussion below. The recovery sought in the present case is based solely on the written contract, not on insurance theory for which attorney's fees are available.

The insured can be properly awarded attorney's fees when the only cause of action tried in the case arises under an uninsured/underinsured motorists insurance contract when the insured establishes she had a valid claim, she was represented by an attorney, and she sent a timely presentment letter yet received no timely settlement offer. The insured is not required to prove a specific amount before the insured can recover attorney's fees.[29]

In *Burke*, this Court stated that the purpose of the exclusions in Article 2226 (the precursor to Section 38.001) was to exclude only those actions under which attorney's fees were already recoverable under another statute.[30] The suit in the present case does not fall within one of the exclusions under Chapter 38, as the suit was brought solely for breach of contract. State Farm argues,

---

**28.** *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

**29.** *Novosad v. Mid–Century Ins. Co.*, 881 S.W.2d 546, 552 (Tex.App.-San Antonio 1994, no writ); *State Farm Mut. Auto. Ins. Co. v. Clark*, 694 S.W.2d 572, 574 (Tex.App.-Corpus Christi 1985, no writ); *Prudential Ins. Co. of Am. v. Burke*, 614 S.W.2d 847, 850 (Tex.App.-Texarkana) (op. on reh'g), *aff'd per curiam*, 621 S.W.2d 596 (Tex. 1981).

**30.** *Burke*, 614 S.W.2d at 850.

among other things, that the *Burke* decision has been overruled *sub silentio* by the Supreme Court in *Dairyland County Mut. Ins. Co. v. Childress*[31] and *Travelers Indem. Co. v. Mayfield.*[32] Based upon these opinions, State Farm posits that Section 38.006 actually means that if any insurance company *could be* liable under the stated portions of the Insurance Code, then attorney's fees are unavailable even for a simple suit on contract. This position has been adopted by the Fifth Circuit in *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*[33]

The federal court's analysis of *Dairyland,* however, is flawed. The Fifth Circuit noted that the *Burke* opinion's analysis had been adopted by a number of other appellate courts, but then stated that it was bound by the Supreme Court's decision in *Dairyland,* as it *implied* that "an insurer who falls within the provisions of Section 38.006 is exempt from the payment of attorney's fees and that only those insurers who do not qualify for the exemption are subject to the payment of attorney's fees."

The decision in *Dairyland* actually held that, since a Mutual Insurance Company was not an insurer under the terms of the Insurance Code provisions, certainly it could not be exempt under Section 38.006. The Court did not take the additional step of holding that 38.006 *always* exempted insurers from attorney's fees, no matter what the action against them might be.

Further, the Fifth Circuit erred in stating that the only time the Supreme Court had addressed the issue was in *Dairyland.* The *Burke* opinion from this Court was reviewed by the Supreme Court, which denied writ with the express notation that the Court of Appeals had correctly decided the case as it related to attorney's fees.

The *Travelers* opinion relied upon by State Farm had not been written at the time of the

*Bituminous* opinion. It is also distinguishable. In *Travelers,* attorney's fees were available for a workers' compensation claim under the specific terms of the Labor Code, and the Court held that those terms provided the specific authority for recovery in that situation. In dicta, the Court noted that the appellant had *not contended* that she could recover based upon the agreement between the parties, and then the Court stated:

> Indeed, she cannot do so, as section 38.001 of the Texas Civil Practice and Remedies Code, which generally authorizes recovery of attorney's fees for suits on a written contract, does not apply to insurance contracts subject to article 21.21 of the Texas Insurance Code.... The compensation policy issued by Travelers falls within this exception.[34]

This statement can be read to state that Section 38.001 will not apply when an insured can otherwise recover attorney's fees under the Insurance Code. The Court then turned to the argument that appellant *did* raise, and held that the trial court could not award attorney's fees under either the Government Code or its own inherent authority. This authority has not overruled the line of cases typified by *Novosad* and *Burke.*

State Farm also argues that attorney's fees were unavailable because there was no duty to pay under the terms of the contract until the insureds showed themselves to be legally entitled to recover from the uninsured motorist. This position has been taken in connection with a suit against a carrier to recover on an uninsured/underinsured motorist coverage claim and to seek attorney's fees based upon Section 38.001.[35] The courts reasoned that, since a motorist was not legally entitled to recover under the uninsured motorist provision until the amount of damages was determined,[36] if un-

31. 650 S.W.2d 770 (Tex.1983)

32. 923 S.W.2d 590 (Tex.1996) (orig.proceeding).

33. 975 F.2d 1130, 1133 (5th Cir.1992).

34. *Travelers Indem. Co. v. Mayfield,* 923 S.W.2d at 593.

35. *Sprague v. State Farm Mut. Auto. Ins. Co.,* 880 S.W.2d 415, 417 (Tex.App.–14th Dist.1993, no writ); *Sikes v. Zuloaga,* 830 S.W.2d 752 (Tex. App.-Austin 1992, no writ).

36. *Franco v. Allstate Ins. Co.,* 505 S.W.2d 789 (Tex.1974).

liquidated damages were involved then the claim could not be presented until the damages were determined. Section 38.002 of the Texas Civil Practice and Remedies Code requires that:

To recover attorney's fees under this chapter:

(1) the claimant must be represented by an attorney;

(2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

The claim was under a contract. Although the claim might turn out to be invalid, that does not mean that the presentment could not be made until the propriety of the claim was determined. If so, then attorney's fees could never be available in a suit on contract, because until a court determined whether a party was actually liable under the contract, no presentment could be made.

An award of attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract, preceded by proper presentment, is mandatory.[37]

It is well established that no particular form of presentment is required.[38] Nor is there a requirement that the presentment include any mention of a sum or amount owing.[39] Furthermore, recovery is allowable even if the award is entirely offset by the opposing party's claim.[40]

We have previously concluded that presentment was adequate as to the Whiteheads. No findings of fact were filed in this case, and attorney's fees are not stipulated.

We conclude that the trial court erred by refusing to award attorney's fees to the Whiteheads. Because no specific finding was made by the fact finder as to the amount of attorney's fees to which the Whiteheads would be entitled, we are not in a position to alter the judgment by adding attorney's fees. The question of reasonableness of attorney's fees is generally a question for the fact finder.[41] We find that the trial court erred in failing to award attorney's fees, but we believe that this Court would be exercising original rather than appellate jurisdiction if we attempted to establish the proper amount of reasonable attorney's fees.[42] An appellate court should not usurp the fact finding function of the trial court.[43]

The judgment of the trial court is affirmed on all matters except its failure to award reasonable attorney's fees to the Whiteheads in this breach of contract. The portion of this litigation concerning the amount of reasonable attorney's fees for the Whiteheads is severed and remanded to the trial court for a determination and award thereof.

**37.** *Stewart Title Guar. Co. v. Aiello*, 911 S.W.2d 463, 474 (Tex.App.-El Paso 1995), *rev'd on other grounds*, 941 S.W.2d 68 (Tex.1997); *Arguelles v. Kaplan*, 736 S.W.2d 782, 786 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.); *Caldwell & Hurst v. Myers*, 714 S.W.2d 63, 65 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 645 (Tex.App.-Corpus Christi 1984, no writ).

**38.** *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 719 (Tex.App.-Houston [1st Dist.] 1988, writ denied).

**39.** *Arch Constr., Inc. v. Tyburec*, 730 S.W.2d 47, 50 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Stuckey v. White*, 647 S.W.2d 35, 38 (Tex.App.-Houston [1st Dist.] 1982, no writ).

**40.** *McKinley v. Drozd*, 685 S.W.2d 7, 10 (Tex. 1985).

**41.** *Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439 (Tex.App.-Texarkana 1993, writ denied).

**42.** *See International Security Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349 (Tex.1971).

**43.** *Industrial Disposal Supply Co. v. Perryman Bros. Trash Service*, 664 S.W.2d 756, 760–61 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.); *Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439 at 451.