Affirmed and Opinion filed November 18, 2003









Affirmed and Opinion filed November 18, 2003.

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00965-CV

____________

 

BRANDI HYDE BROWN, Appellant

 

V.

 

HOUSTON INDEPENDENT SCHOOL
DISTRICT, Appellee

 



 

On Appeal from the 270th
Judicial District Court

Harris County, Texas

Trial Court Cause No. 01-12351

 



 

O P I N I O N 

Appellant sued the Houston Independent School District (AHISD@) after she was sexually
assaulted by an HISD police officer.  The
trial court held that HISD was entitled to governmental immunity and granted
summary judgment in its favor.  In a
single point of error, appellant contends the officer=s use of a patrol car brings
her claim within an exception to governmental immunity under the Texas Tort
Claims Act (ATTCA@).  Because we find that appellant=s injuries did not arise out of
the use of the officer=s patrol car, we conclude that
this incident did not fall within an exception under the TTCA and we affirm.

 








FACTUAL AND PROCEDURAL BACKGROUND

Viewing the evidence in the light most favorable to
appellant, the facts are as follows.  At
approximately 3:00 a.m. on May 19, 1997, appellant was driving her truck in the
Westheimer area of Houston.  John Leo Nicholas (ANicholas@), an on-duty HISD police
officer, pulled behind appellant in his patrol car.  He activated his emergency flashers and used
the patrol car=s bull horn to order appellant
to stop.  Appellant pulled her truck into
a nearby parking lot.

Nicholas accused appellant of being drunk, which she
denied.  Nevertheless, Nicholas refused
to allow appellant to leave the parking lot. 
Nicholas began making sexually suggestive comments and forced appellant
to lift her shirt.  Nicholas then ordered
appellant to follow his patrol car with her truck.  Nicholas led appellant to the Lamar High
School parking lot, where he sexually assaulted her.

Appellant filed suit against HISD, alleging negligence and
gross negligence arising from Nicholas=s use of the patrol car and
HISD=s failure to supervise and
monitor that use.  HISD asserted the
affirmative defense of governmental immunity, and moved for summary judgment on
that ground.  The trial court granted
HISD=s motion for summary judgment. 

ANALYSIS

In a single point of error, appellant contends the trial
court erred in granting summary judgment for HISD because Nicholas=s use of his patrol car brings
her claim within an exception to governmental immunity under the TTCA.  Appellant claims that this case falls within
the exception to the TTCA because the rape would not have occurred had Nicholas
not used the marked patrol car, including the emergency flashers, to force
appellant to stop her car.  She claims
also that the assault began with the initial stop when Nicholas forced
appellant to bare her breasts then continued with the rape itselfCafter the officer forced her to
follow him to another location.








The TTCA provides that a school district is liable for
negligence of an employee acting within the scope of his employment if the
injury Aarises from the operation or
use of a motor-driven vehicle . . . .@  Tex.
Civ. Prac. & Rem. Code ' 101.021; see also id.
' 101.051.  Despite the Texas Supreme Court=s requests, the Legislature has
not defined the term Ause.@  Tex. Dep=t of Criminal Justice v. Miller, 51 S.W.3d 583, 589 (Tex.
2001).  Therefore we apply the ordinary
meaning of the term, Ato put or bring into action or
service;  to employ for or apply to a
given purpose.@  Mount Pleasant Indep.
Sch. Dist. v. Estate of Lindburg,
766 S.W.2d 208, 211 (Tex. 1989). 
Recently, the Supreme Court has held that the use must have actually
caused the injury.  Dallas Area Rapid
Transit v. Whitley, 104 S.W.3d 540 (Tex. 2003); Tex. Natural Res.
Conservation Comm=n. v. White, 46 S.W.3d 864, 869 (Tex.
2001).  

We have already addressed a very similar fact scenario
involving an allegation that  a rape by a
police officer fell within the exemption to the TTCA.  See Holder v. Mellon Mortgage Co., 954
S.W.2d 786 (Tex. App.CHouston [14th Dist.] 1997), rev=d on other grounds, 5 S.W.3d 654 (Tex. 1999).[1]  In Holder, a Houston police officer
stopped a woman for an apparent traffic violation.  Id. at 789.  The officer ordered her to follow him to a
parking garage, where he sexually assaulted her.  Id. 
She sued the City of Houston, but the trial court granted summary judgment
for the City based on governmental immunity. 
Id. at 790.  We affirmed,
holding the link between the use of the police car and the injury was not
sufficient to bring the claim within the TTCA=s waiver of immunity.  Id. at 807.  We concluded:

In this case, the use of the patrol
car was not the Adirect device@ causing Holder=s injury, and the Arequired causal nexus@ for liability under the TTCA is
missing.  Instead, Holder was injured by
Potter=s intentional assault.








Id.  Although the
plaintiff in Holder did not claim that the injury arose out of the use
of the patrol car and its lights, and claimed instead that it constituted a use
of tangible personal property, the result is the same, as we discuss in more
detail below.  

Like we did in Holder, the Texas Supreme Court has
required that the property used actually cause the injury.  For example, an injury did not arise out of
the use of medication when A[n]either the drugs nor the
treatment afforded to Miller hurt him or made him worse, in and of themselves.@  Tex. Dep=t of Criminal Justice v. Miller, 51 S.W.3d 583, 588 (Tex.
2001).  Miller=s widow had sued the Department
of Criminal Justice alleging that the negligent use of medication and
diagnostic equipment masked the symptoms of his meningitis.  Id. at 587.  The Court held that even though use of the
medication Amight have furnished the
condition that made the injury possible,@ that use did not itself cause
the injury.  Id. at 588.

More recently, in Dallas Area Rapid Transit v. Whitley,
the Supreme Court reiterated that a nexus must exist Abetween the operation or use of
the motor‑driven vehicle or equipment and a plaintiff=s injuries.@  104 S.W.3d at 543.  The Court continued, AThis nexus requires more than
mere involvement of property.@  Id. 
And the Court finally said, AThe [vehicle]=s use must have actually caused
the injury.@  Id. (citing Tex. Natural Res.
Conservation Comm=n v. White, 46 S.W.3d 864, 869 (Tex.
1999)).  AThus, as with the condition or
use of property, the operation or use of a motor vehicle >does not cause injury if it
does no more than furnish the condition that makes the injury possible.=@  Id. (quoting Dallas County Mental
Health & Mental Retardation v. Bossley, 968
S.W.2d 339, 343 (Tex. 1998)).  

This conceptCthat injuries do not arise out
of the use of a vehicle when the vehicle itself did not cause the injuryCis not new.  The Beaumont Court of Appeals has held that
the assault of passengers on a school bus did not arise out of the use of that
bus.  Estate of Garza v. McAllen Indep. Sch. Dist., 613 S.W.2d
526, 528 (Tex. App.CBeaumont 1981, writ ref=d n.r.e)
(ATrevino=s knife and not the use of the
bus was the cause of plaintiffs= damage.@).  








Courts have employed this same definition of Ause@ when dealing with insurance
coverage questions as well as when dealing with the TTCA.[2]  This court and the First District Court of
Appeals have held that insurance coverage did not exist because injuries sustained
in drive-by shootings did not arise out of the use of the vehicles.  See Le v. Farmers Tex. County Mut. Ins. Co., 936 S.W.2d 317, 321 (Tex. App.CHouston [1st Dist.] 1996, writ
denied) (AThe gun was the instrumentality
that caused Tuan Le=s injuries, not the car.@); Collier v. Employer=s Nat=l Ins. Co., 861 S.W.2d 286, 289 (Tex.
App.CHouston [14th Dist.] 1993, writ
denied) (AThe shotgun, not the uninsured
vehicle, was the instrument that caused Collier=s injury; therefore, we hold
that the injuries did not arise out of the use of the uninsured vehicle.@).








In spite of this line of cases in both the TTCA and the
insurance arena, appellant cites us to a 1999 Texas Supreme Court case
involving insurance coverage that she claims supports her position.  See Mid-Century Ins. Co. of Tex. v.
Lindsay, 997 S.W.2d 153 (Tex. 1999). 
As with the drive-by shooting cases, Mid-Century involved
insurance coverage, not the TTCA.  See
id. at 154.  In Mid-Century,
a nine-year-old boy tried to climb into his parent=s locked truck through the
truck=s sliding rear window, which
was slightly open.  Id.  While doing this, he accidentally touched
a loaded shotgun resting in a gun rack mounted over the rear window.  Id. 
The gun discharged, hitting Lindsay, who was sitting in a car parked
next to the truck.  Id.  The Supreme Court held that the injury arose
out of the use of a motor vehicle.  Id.
at 161B63.  But in reaching that holding, the Court
relied on a line of insurance coverage cases in which a gun was discharged in
or from vehicles.  Id.  The Supreme Court pointed out that the
majority of jurisdictions had found coverageCi.e. Ause of a motor vehicle@Cin a situation similar to Mid-Century.  Id. 
In fact, the Court knew of only one Agun rack@ case in which coverage was
denied.  Id. at 163.  However, we believe Mid-Century may be
of limited use outside the context in which it occurred.  The accidental discharge of firearms has
produced a whole body of case law in which insurance coverage was the
issue.  This body of law ultimately
controlledCor at least directedCthe outcome in Mid-Century.  Regardless, one point was clear from the
opinionCthe Court adhered to earlier
cases in which it found that an injury did not arise out of the use of the
vehicle.  For example, the Court repeated
language from earlier opinionsCone of which was a TTCA caseCin which it had found that a
vehicle was not used to cause an injury, but was merely the Alocational setting@ for the injury:

The bus in this case was not in
operation;  it was parked, empty, with
the motor off.  The driver was not
aboard;  there were no students aboard.  The bus was not Adoing or performing a practical work@; 
it was not being Aput or [brought] into action or
service@; 
it was not being Aemploy[ed] or appl[ied] to a given purpose.@ 
The bus was nothing more than the place where Monica happened to injure
herself.

Id. at 156 (quoting LeLeaux
v. Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51B52 (Tex.1992)).[3]

Likewise, the Court repeated language from a case in which
it held that the accidental discharge in a moving vehicle of a firearm which
struck a passenger in a van beside the truck did not invoke the truck insurer=s duty to defend; the defendant
was merely Ausing his truck as a truck@ and the plaintiff failed to
establish even a remote causal relationship between that use and the
shooting.  Id. at 156B57 (citing Nat=l Union Fire Ins. Co. v.
Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 142 (Tex. 1997)).  The Court reasoned that A>the mere fact that an
automobile is the situs of the accident is not enough
to establish the necessary nexus between the use and the accident to warrant
the conclusion that the accident resulted from such use.=@  Id. at 157 (quoting Nat=l Union, 939 S.W.2d at 142). 








In addition to considering these cases, the Court discussed
the AAppleman test,@ designed to assist a court /
insurer / insured in determining whether an injury arises out of the use of a
motor vehicle for purposes of auto liability insurance coverage.  Id. 
Although the Court noted some difficulty in applying the test and
pointed out that it was not an absolute test, it still used the test.[4]  Id. 
The test is as follows:

For an injury to fall within the Ause@ coverage of an automobile policy (1)
the accident must have arisen out of the inherent nature of the automobile, as
such, (2) the accident must have arisen within the natural territorial limits
of an automobile, and the actual use must not have terminated, (3) the
automobile must not merely contribute to cause the condition which produces the
injury, but must itself produce the injury. 

Id. at 157 (quoting 2 Couch
on Insurance 3d ' 119.37, at 119-56 (1997); accord
6B John A. Appleman, Insurance Law and Practice (Buckley
ed.) ' 4317, at 367B69 (1979)).  

Applying the test to these facts crystalizes
the problem with appellant=s case and makes it clear the
patrol car was not being Aused@ when Nicholas assaulted
appellant.  First, the injuries in this
case did not occur within the territorial limits of the patrol car; instead,
they occurred in appellant=s truck and in the parking
lot.  Second, the patrol car did not
itself produce the injury; Nicholas did. 
The patrol car only assisted Nicholas in accomplishing his unlawful
purpose.  Thus, Mid-Century does
not have as far-reaching an impact on Ause@ cases as appellant wishes; it
seems confined to the Agun discharge@ category of cases.  And, when we apply the Appleman
test discussed in Mid-Century, it confirms that appellant=s injuries did not arise out of
the use of the patrol car.  








Finally, we feel it necessary to address briefly a case
appellant relied on heavily at oral argument. 
See Austin Indep. Sch.
Dist. v. Gutierrez, 54 S.W.3d 860 (Tex. App.CAustin 2001, pet. denied).  In Gutierrez, a young girl was dropped
off across the street from her home by her school bus.  The bus driver honked the bus horn to signal
to the girl that she could cross the street. 
However, when she crossed the street, she was hit by a car and
killed.  Finding that the injury arose
out of the use of the bus, the Gutierrez court pointed out that the bus
driver took Athe affirmative action of
honking the horn which may have contributed to the accident.@  Id. at 866.  Or, to frame the finding in parlance the
Supreme Court has recognized, the bus was much more than merely a locational setting where the injury occurred; a part of the
busCthe bus=s horn, to be exactCwas used to actually cause the
little girl=s injuries and ultimate
death.  Here, no part of the patrol car
was used to cause appellant=s injuries.  Thus, we find Gutierrez distinguishable.


In conclusion, considering the clear statements from the
Supreme Court that the motor vehicle must have actually caused the injury, we
are compelled to conclude that appellant failed to state a claim for which
governmental immunity was waived under the TTCA, and overrule appellant=s well-argued point.  See Tex.
Civ. Prac. & Rem. Code '' 101.021, 101.051. 

The judgment of the trial court is affirmed.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Opinion filed November 18, 2003.

Panel
consists of Justices Yates, Hudson, and Fowler.











[1]  The issue of
governmental immunity was not appealed to the Texas Supreme Court.





[2]  In these
cases, the policies involved language similar to the TTCA.  See Le v. Farmers Tex. County Mut. Ins. Co., 936 S.W.2d 317, 320 (Tex. App.CHouston [1st Dist.] 1996, writ denied) (Aarise out of the ownership, maintenance or use of the
uninsured motor vehicle@); Collier v. Employer=s Nat=l
Ins. Co., 861 S.W.2d 286, 290 (Aarising out of the use of the uninsured motor vehicle@). 





[3]  Monica was
injured when she stood up in the back of a school bus and hit her head.  LeLeaux, 835
S.W.2d at 51.





[4]  We used the test in Collier to
conclude a drive-by shooting was not a use of an automobile.   See Collier, 861 S.W.2d at 289.